UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:12-CV-173-KSF

KAYLA ADKINS                                                    PLAINTIFF

vs.                              **OPINION AND ORDER**

SHELTER MUTUAL INSURANCE CO.                                   DEFENDANT

* * * * * * * *

This matter is before the Court on Defendant Shelter Mutual Insurance Company's ("Shelter) objections to a discovery order entered by Magistrate Judge Robert E. Wier on March 5, 2013 and motion to stay. For the reasons discussed below, the objections will be overruled and the motion denied.

I.      **BACKGROUND**

Plaintiff Kayla Adkins ("Adkins") was involved in an automobile accident on October 25, 2008 when she was seventeen years of age. Kayla Roe ("Roe") was a passenger in the Adkins' vehicle. The driver of the vehicle that apparently caused the accident was Anthony Mason, who was insured by Shelter. On December 11, 2008, Shelter adjuster Linda Yates ("Yates") contacted Adkins' mother, Jessica Collins ("Collins"), and learned that Roe had retained an attorney but Adkins had not. On December 18, Yates offered to pay $500 for Adkins' personal injury claim in exchange for a release of Mason and Shelter. Adkins' mother accepted the offer and signed an "Indemnifying Release." Yates testified that the settlement offer was made at the direction of her supervisor, Crystal Turner. DE 23-2 (Yates Depo.) at 44. No court approval was sought or obtained for this settlement.

After she turned eighteen, Adkins contacted an attorney, filed suit and obtained a higher settlement from Shelter for her injuries. Shelter maintains that the additional settlement amount

was a result of Adkins' subsequent medical expenses and the potential cost of litigation.  Adkins brought this new lawsuit against Shelter in May 2012 alleging violation of the Unfair Claims Settlement Practices Act and common-law bad faith, for which she seeks compensatory and punitive damages.

After several discovery battles, Adkins obtained other Shelter claims files handled by Linda Yates.  Ms. Yates testified that in 2008 it was not Shelter's policy to obtain court approval for all settlements with minors.  DE 43-3 (Yates Depo.) at 8.  Shelter's policy was changed in 2012 so that all settlements with minors must now be court approved.  *Id.* at 7.  After reviewing the claims files and Yates' testimony, Adkins' expert, Burke A. Christensen, concluded that Shelter avoided court approval for settlements with minors when the claimant was not represented by counsel and that the settlements were much smaller.  DE 43-2 at 3.  Christensen notes that the database "is a small one and generalizations are difficult."  *Id.*  He also notes a number of Shelter Claims Adjusting Guidelines that were not followed by Yates.  *Id.* at 4-5.

On January 9, 2013, Plaintiff moved to extend the discovery deadlines and for an expansion of the prior discovery order to include disclosure of all claims by minors settled by Shelter's Kentucky adjusters without court approval for a period of ten years prior to this litigation.  DE 23 at 7.  Shelter acknowledged settling minor claims without court approval, but said it "did so with the intention of re-opening the files should the claimant request additional compensation."  DE 33 at 1.  It argued that such "provisional" settlements were not bad faith and that Plaintiff was attempting "to apply financial pressure to force a settlement."  *Id.* at 2.  It noted that some of its files were not stored electronically and that the paper files would be time consuming to review.  *Id.* at 8.  Shelter said it conservatively estimated the cost to comply with the request at "over $135,000."  *Id.* at 2, 8.  It argued that Plaintiff's claims were without merit and that the discovery request was "punitive, unnecessary, and a monumental waste of time and resources."  *Id.*  at 6.  It also noted that files for claims closed prior to 2008 were purged in the ordinary course of business.  *Id.* at 7.

2

Following a hearing March 1, 2013, Magistrate Judge Robert E. Wier granted Plaintiff's motion in part. DE 37. He noted Shelter's inconsistent treatment of the settlements and that the current "provisional" policy conflicted with the language of the documents and Shelter's prior treatment of them. Significantly, the release Shelter required says that the parents agree to hold Shelter and others harmless and to reimburse them "if any litigation arises from these injuries." DE 34-2. Magistrate Judge Wier noted Plaintiff's claim of bad faith of Shelter knowingly pursuing minor settlements contrary to a Kentucky law designed to protect minors in the settlement context. He noted Adkins' argument that the provisional settlement policy would be fraudulent because only Shelter would know the settlement was ineffectual, whereas the parent would think he or she would be liable if any claim was later reopened. DE 37 at 3. Magistrate Judge Wier also noted Plaintiff's argument at the hearing that Yates' handling of claims was not unintentional conduct by a misinformed adjuster, but was intentional conduct by multiple adjusters and that the discovery sought was relevant to the overall claims as well as punitive damages. *Id.* at 4.

Magistrate Judge Wier held that Plaintiff is entitled to more information about the policy of settlement with minors and is entitled to a sample sufficient to define and test the policy. Accordingly, Plaintiff's motion was granted in part. The disclosure was limited to: (1) claim files related to bodily injury suffered by a minor and settled without court approval; (2) by any adjuster in the Lexington office; (3) for the period from May 2008 to May 2011; and (4) encompassed only electronic files. Shelter was ordered to report on its progress in 30 day intervals. *Id.* at 5-7.

Shelter objected to the Magistrate Judge's Order on multiple grounds, most of which are a rehash of its earlier arguments. Shelter insists that other claim files "will not prove or disprove any facts which have any bearing on whether Shelter acted in bad faith towards Plaintiff." DE 42 at 2. It contends that Plaintiff's case is totally without merit, and that Shelter's conduct was beneficial to Plaintiff. *Id.* at 5-7.

Shelter argues the Order was clearly erroneous because it could encompass a claim arising outside of Kentucky.  Shelter represents, without any citation to a transcript or a stipulation by opposing counsel, that Plaintiff's counsel said at the hearing that he did not want claims arising outside Kentucky. *Id.* at 8-9.  Shelter's next objection is that the Magistrate Judge assumed Shelter had a duty to obtain court approval.  Shelter cites to forms from the Administrative Office of the Courts ("AOC") to argue that only a parent or guardian can petition for court approval. *Id.* at 9-11.

Shelter contends the claims files will not disclose evidence regarding its earlier policy, and that Plaintiff should use the less costly form of discovery of taking testimony of Shelter representatives.  Moreover, Shelter admits that claims handling was intentional conduct by multiple adjusters, and there was no guidance for their exercise of discretion. *Id.* at 11-12.  Shelter denies that it targeted low income, uneducated, unrepresented, single parent families and says this claim is supported only by Plaintiff's "expert's naked accusations." *Id.* at 12.  Shelter argues that it is willing to stipulate that it "did not seek court approval of all settlements of minors' claims and that it provisionally settled some minors' claims without seeking court approval."  It asserts this stipulation renders claim file information cumulative and inadmissible. *Id.* at 13-15.

Shelter argues the order is clearly erroneous because the Magistrate Judge said in a footnote that he "admits of some doubt about the burden described." DE 37 at 5, n. 3.  Shelter says the affidavits regarding $45 per hour overtime costs of $33,000 to review paper and electronic files and $1,000 per file to review, redact, copy and produce the requested files were uncontradicted.  Accordingly, Shelter contends the evidence could not be doubted. *Id.* at 15-17.  Shelter also criticizes  another footnote stating the three years of discovery ordered is only 30 percent of what Plaintiff sought and should make the burden more palatable.  Shelter claims that, because files prior to 2008 were never available, the discovery ordered was 70 percent of the available files.  Shelter's new estimate is that the discovery will cost $84,000. *Id.* at 17-19.

Shelter contends that Magistrate Judge Wier prejudged the merits of the case and applied an erroneous standard for bad faith.  It argues that Adkins was not defrauded because she testified that she always intended to file a lawsuit.  It admits, however, that she testified regarding bad faith.  Shelter reiterates there is no evidence of bad faith because the settlement was provisional and Shelter had no duty to obtain court approval.  *Id.* 19-22.  Shelter also argues there is no evidence that Plaintiff suffered damages because she later settled for $12,000, whereas a court would have approved the $500 settlement.  If there are no compensatory damages, Shelter says there can be no punitive damages.  *Id.* at 22-26.      Shelter's final objection is a new issue that the ninety-day time period to produce the files is "unreasonable and unrealistic."

## II.   ANALYSIS

Pursuant to Fed. R. Civ. P. 72(a), a district judge "must consider timely objections and modify or set aside any part of the [magistrate judge's nondispositive] order that is clearly erroneous or is contrary to law."  *See also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) ("A district court shall apply a 'clearly erroneous or contrary to law' standard of review for the 'nondispositive' preliminary measures of § 636(b)(1)(A))."  This standard of review is a limited one.  *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993).

> Under the clearly erroneous standard, a court reviewing a magistrate judge's order should not ask whether the finding is the best or the only conclusion that can be drawn from the evidence.  Further, this standard does not permit the reviewing court to substitute its own conclusion for that of the magistrate judge.  Rather, the clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable.

*Brownlow v. General Motors Corp.*, No. 3:05CV414, 2007 WL 2712925 at *3 (W.D. Ky. Sept. 13, 2007), citing *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

5

In the present case, Shelter devotes much time and energy to discussions that Plaintiff's claims are all without merit and that the evidence sought in discovery would not be admissible. See, e.g., DE 42 at 5 ("Ms. Adkin's bodily injury claim was questionable at best"); DE 42 at 6 ("Plaintiff grossly exaggerates the nature of the conduct in this matter"); DE 42 at 9-10 (Shelter was not obligated to seek court approval); DE 42 at 14 ("The claim files of other minors will likely not be admissible for any purpose at trial"). Many of these arguments are largely irrelevant at this time. The discovery request was not a motion for summary judgment, and discoverable "information need not be admissible at the trial...." Fed. R. Civ. P. 26(b)(1). A focused argument under Rule 26(b)(2)(C)(iii) might have served Shelter's purposes more effectively. Nonetheless, the only question before this Court is whether there is evidence to support the magistrate judge's ruling and whether the ruling was reasonable.

With respect to the objection that the discovery ordered includes claims outside of Kentucky, when Plaintiff is interested only in Kentucky, there are several considerations. First, Shelter could well be mistaken in its interpretation that the Order compels production of files that Plaintiff does not want. If there is doubt, Shelter could obtain a stipulation from opposing counsel or a transcript of the hearing to relieve it from any perceived burden to produce unwanted documents. At this time, it is Shelter that provides no evidence to support its interpretation. It has failed to demonstrate that the Order is clearly erroneous in this regard.

Shelter next claims the court was clearly erroneous in believing that Shelter had some duty to obtain court approval for its settlements and that settling claims without court approval is problematic under KRS 387.280. Shelter takes the position that only a parent or guardian can seek court approval for a settlement and, thus, Shelter has no duty at all. This position is contradicted, however, by Shelter's practice in the past of obtaining court approval for some settlements and its current practice of obtaining approval for all settlements involving minors. Surely, Shelter is not wasting its resources obtaining court approval in every minor settlement case when it has no

obligation to do so.  Ms. Yates testified that they obtained court approval simply by getting their attorney involved.  DE 43-3 (Yates Depo.) at 13.  The AOC forms relied upon by Shelter are for appointment of a guardian/conservator for a minor, not for court approval of a settlement and, therefore, have no persuasive value.  See DE 42-2.

The plain language of KRS 387.280 also supports the Magistrate Judge's interpretation of the statute.  It permits payment to a person having custody of a minor "upon court order" and then states: "[b]efore entering the order, the court shall approve any settlement or compromise...."  Shelter argues that it is not required to obtain court approval because its settlements are only "provisional" and are not final.  Once again, Shelter is contradicted by its own conduct of requiring a release that says in part: "[t]his release fully settles and discharges all claims against Releasees."  DE 34-2.  Shelter has not shown the Magistrate Judge's Order was clearly erroneous in this regard.

Shelter objects that its stipulation that it provisionally settled some minors' claims without seeking court approval should have foreclosed further discovery, but the stipulation does not admit bad faith or the elements of punitive damages.  Plaintiff has alleged both and is entitled to discovery relevant to those allegations.  The Magistrate Judge correctly ruled that the requested discovery is relevant to Plaintiff's allegations.

Shelter next takes issue with the Magistrate Judge's comment that the court admits of some doubt about the burden described.  Shelter argues there can be no doubt because its employees swore that the discovery would be time consuming and expensive.  Shelter does not discuss the basis for the court's comment, which followed in the footnote.  "In the scheme of commercial litigation, and the Court sees a lot of it, this is not a production that strikes the undersigned as unusually broad or burdensome."  DE 37 at 5, n. 3.  Just because Shelter's employees provided sworn statements, does not mean that the Court must disregard all of its experience in similar situations and also take leave of its common sense.  There is nothing clearly erroneous about the court relying on its extensive experience in similar cases.

7

Shelter's final objection is a new claim that ninety days to produce the files is unreasonable. Shelter stated in its initial response, however, that "Shelter estimates it would take several months to complete such an arduous task."  DE 33 at 14.  Ninety days is "several months," and it is twice the forty-five days suggested by Plaintiff.  Additionally, the court orders Shelter to report in 30 day intervals on its progress and to provide a certified estimate of the time required for full compliance. The Order continued that "[t]he Court may set an evidentiary hearing to explore the forecasted burden at that time."  DE 37 at 6-7.  In other words, the Magistrate Judge gave Shelter an opportunity to prove the forecasted burden as discovery progressed and to seek an appropriate adjustment.  There is no clear error in that part of the Magistrate Judge's Order.

III.   **CONCLUSION**

**IT IS ORDERED** that:

1.    Defendant's objections [DE 37] to the March 5, 2013 Order are **OVERRULED**;

2.    Defendant's motion to stay pending a ruling on its objections [DE 45] is **DENIED AS MOOT**, and Defendant's motion to stay pending a possible writ of prohibition to the Sixth Circuit [DE 45] is **DENIED**;

3.    Defendant's obligation to report to Magistrate Judge Wier at thirty-day intervals on its progress begins upon the date of entry of this Order; and

4.    All other provisions of the March 5, 2013 Order remain in full force and effect.

This April 8, 2013.



**Signed By:**

**_Karl S. Forester_**  K S F

**United States Senior Judge**