UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISIION
AT LEXINGTON

| | |
|---|---|
| **KAYLA ADKINS,**<br>    **Plaintiff,**<br><br>**V.**<br><br>**SHELTER MUTUAL INS. CO.,**<br>    **Defendant.** | **CIVIL ACTION NO. 5:12-173-KKC**<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff's motion to file a Third Amended Complaint. For the reasons set forth below, the motion will be granted in part and denied in part.

## I.    BACKGROUND

In October 2008, Kayla Adkins ("Adkins") was the victim of an automobile accident caused by Anthony Mason ("Mason"), who was insured by Shelter Mutual Insurance Company ("Shelter"). Adkins was seventeen years old at the time of the accident. On December 19, 2008, Adkins' mother settled Adkins' claim for $500 and signed Shelter's "Indemnifying Release" ("Release"), which said it "fully settles and discharges all claims" and indemnifies the Releasees "if any litigation arises from these injuries." DE 82-4. No court approval for the settlement was sought. Kentucky law requires court approval for settlements involving minors. KRS 387.280.

In 2009, Adkins retained counsel and filed suit against Mason. Adkins alleges that Shelter refused to negotiate the claim based on the signed Release. DE 1-7, Second Amended Complaint, ¶ 9. Adkins subsequently settled her claim with Shelter for $12,000. In 2012, Adkins filed this action against Shelter, alleging violation of the Unfair Claims Settlement Practices Act ("UCSPA") and Common Law Bad Faith. DE 1-7. The parties have engaged in

contentious discovery involving multiple hearings and orders by Magistrate Judge Robert E. Wier. After Shelter was ordered to provide certain limited discovery, Judge Wier expanded the scope of discovery in March 2013 to include Kentucky claims by minors from May 2008 to May 2011 that were settled without court approval. DE 37. Shelter's objections to this order and motion for a stay were overruled. DE 46. Shelter's petition for a writ of prohibition to the Sixth Circuit was denied. DE 50.

On September 24, 2013, Shelter provided a final status report that eighty claim files were being produced. DE 54. Adkins argues that the production included "over ten thousand pages of additional claims files." DE 90 at p. 2. After reviewing these documents and other discovery, Adkins alleges she found at least eighty-eight other claims involving minors that were settled by Shelter without court approval. DE 82-2 ¶ 19. Accordingly, she says she "now has basis to believe that Shelter's behavior was not an isolated incident, or the product of an innocent mistake," as Shelter has argued. DE 90 at p, 2.

The Fourth Amended Scheduling Order in this case permitted motions to amend pleadings through April 28, 2014. DE 61. Adkins moved to file a Third Amended Complaint on April 23, 2014, adding claims of violation of the Kentucky Consumer Protection Act, fraud in the inducement, fraud by omission, negligence/gross negligence, negligent misrepresentation, negligent training and supervision, intentional misrepresentation, intentional infliction of emotional distress, and RICO. DE 82-2. These claims are based primarily on allegations of a pattern or practice of settling minors' claims and obtaining signed Releases without court approval. *Id.* Shelter moved to file an Amended Answer on April 28, 2014. DE 83.

Shelter opposes the motion to amend as unduly delayed and prejudicial. It further argues that most of the claims are futile, as they would not survive a motion to dismiss. DE 85.

## II.   ANALYSIS

### A.   Motion To Amend Generally

While Fed.R.Civ.P. 15(a) provides that leave to amend a pleading shall be freely given, several factors are to be considered when deciding whether to grant a motion to amend:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision.  Delay by itself is not sufficient reason to deny a motion to amend.  Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Wray v. American United Life Ins. Co.,* 503 F. App'x. 377, 384 (6th Cir. 2012), (quoting *Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 458-59 (6th Cir. 2001).  Rule 16 was amended in 1983 to limit the time to amend the pleadings.  Fed.R.Civ.P. 16, 1983 advisory committee's notes.  The present motion to amend was filed before the Rule 16 deadline to amend.

With respect to notice to Shelter, Magistrate Judge Wier's Order of September 28, 2012 compelled disclosure of claims adjusted or settled by Linda Yates between October 2008 and October 2009.  DE 12 ¶ 3.  Ms. Yates' supervisor, Crystal Turner, testified on January 25, 2013 that "it was up to the discretion of the branch on whether you sought court approval of minor injury claims."  DE 90-1 at p. 35.  Adkins' counsel argued on January 9, 2013, that "additional discovery of claim files showing other incidents of similar conduct by Defendant, Shelter, is needed to fully develop Plaintiff's case."  DE 23-1, ¶ 5.  It is this additional discovery that was ordered from Shelter on March 5, 2013 [DE 37] and finally produced September 24, 2013 [DE 54].  In ordering the discovery, the court noted Adkins' argument "that Shelter's 'provisional settlement' model would be fraudulent because Shelter would know the settlement was ineffectual, but the parent/claimant would, per Shelter's prepared release documentation, think the settlement concluded and that the parent would be liable for any later reopened claim."  DE 37 at 3.  Accordingly, Shelter was on notice for at least more than a year that Adkins claimed

Shelter repeatedly engaged in a pattern of settlements and releases for injuries to minors without court approval and that such conduct was in bad faith and fraudulent.

Shelter argues that the "new claims will probably necessitate additional discovery which cannot be completed before the existing deadline of June 30, 2014." *Id.* at 10. This conclusory allegation of prejudice is not supported by any explanation of what discovery would be needed or why existing discovery would not address the new claims.

Shelter also argues in conclusory fashion that Adkins "has essentially transformed the nature of this litigation by adding nine new causes of action," but there is no explanation as to how the case has been "transformed" or how Shelter would be substantially prejudiced. DE 85 at 10-11. Since "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted," this Court will not deny the motion to amend on those grounds. The arguments regarding futility of the new claims are addressed separately below.

### B. Futility of the Amended Counts

Shelter argues that most of Adkins' new claims would not survive a motion to dismiss. Accordingly, Shelter contends the amendment should be denied as futile. *See Riverview Health Institute LLC v. Medical Mutual of ,* 601 F.3d 505, 520 (6th Cir. 2010) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.").

To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.544, 547 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of an entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* at 555. In ruling on the motion to dismiss, all of a plaintiff's allegations are presumed true, and the complaint is construed in the

4

light most favorable to the plaintiff. *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005).

If matters outside the pleadings are considered by the court, the motion becomes one for summary judgment under Rule 56, and the parties must be given an opportunity to present all pertinent material. Fed.R.Civ.P. 12(d). This Court is not treating this motion as one for summary judgment, but instead is focusing on the amended pleading, which contains factual allegations based on discovery.

      1.      <u>Common Law Bad Faith (Count II)</u>

Shelter argues that, under Kentucky law, a "bad faith claim belongs only to the insured" unless the insured assigned the contractual rights to the plaintiff. DE 85 at 11-12. That argument is strongly supported by *Motorists Mutual Ins. Co. v. Glass,* 996 S.W.2d 437 (Ky. 1997) and *Rawe v. Liberty Mutual Fire Ins. Co.*, 462 F.3d 521, 531 (6th Cir. 2006). In *Motorists Mutual*, the court said that in *Manchester Ins. & Indemnity Co. v. Grundy*, 531 S.W.2d 493, 500 (Ky. 1976), "we recognized that under the principle of privity of contract, the cause of action belonged only to the liability insured; but that the insured could assign it to the liability plaintiff in consideration for a release of the insured…." *Motorists Mutual*, 996 S.W. 2d at 451. In *Rawe*, the court held that the "district court correctly dismissed Rawe's third-party common-law bad-faith claim as a matter of law, because the pleadings do not allege that Haggard, who was the insured under the bodily injury policy, ever assigned his rights under the policy to Rawe." *Id.* at 531. *See also Torres v. One Beacon Ins. Co.*, No. 04-191-KSF, 2004 WL 55665597 at *8, n. 7 (E.D. Ky. September 24, 2004) ("Thus, it is clear that, in order to have a cause of action for common law bad faith under Kentucky law, a third-party claim must have an assignment of rights to pursue that claim.")

In the present case, there is no evidence that Adkins was assigned Mason's rights. Adkins makes no attempt to distinguish Shelter's authority. Instead, Adkins argues generally that questions of privity should be liberally construed and that "additional briefing on this issue

5

outside of the abbreviated Rule 12(b)(6) context" is warranted  DE 90 at 11-12.  The Court disagrees.  Kentucky law is clear that Adkins' common law bad faith claim would be futile. Accordingly, Adkins' motion to file a Third Amended Complaint containing Court II, Common Law Bad Faith, will be denied.

### 2. Kentucky Consumer Protection Act (Count III)

Adkins' claim under the Kentucky Consumer Protection Act ("KCPA") would be futile for the same reason.  In *Anderson v. National Security Fire and Cas. Co.*, 870 S.W.3d 432 (Ky. Ct. App. 1993), the court affirmed dismissal of a KCPA claim by a third party and said:  "[W]e have found no cases extending coverage of the Act [KCPA] to third-party claims.  The insured who purchased the policy is the one who may properly have a claim for unfair practices against the insurer.  The insured is the consumer and the one within the class of persons protected by the Act."  *Id.* at 435-36.  "The legislature intended that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act."  *Id.*, quoting *Skilcraft Sheetmetal v. Kentucky* Machinery, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992).  See *also Motorists Mutual*, 996 S.W.2d at 447 ("The Consumer Protection Act has no application to third-party claims.")

To the extent that Adkins may be claiming her settlement with Shelter places her in privity for purposes of the KCPA, the Court disagrees.  KRS 367.220 authorizes a claim by "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" as a result of a violation of KRS 367.170.  A settlement with an insurance company is not a purchase of goods or services primarily for household purposes under the plain language of the KCPA. Adkins does not provide any authority to the contrary.  Accordingly, Adkins' motion to amend will be denied as to Count III of the Third Amended Complaint.

### 3. Allegations of Fraud (Counts IV, V)

Adkins alleges Fraud in the Inducement in Court IV and Fraud by Omission in Court V. DE 82-2 at pp. 8-9.  Shelter argues that the claims of fraud are futile because fraud is not pled

6

with sufficient particularity and that Adkins cannot prove all of the elements of fraud as a matter of law. DE 85 at pp. 13-19. "Whether a state-law claim sounds in fraud, and so triggers Rule 9(b)'s heightened standard, is a matter of substantive state law on which we must defer to the state courts." *Caudill Seed and Warehouse Co., Inc. v. Jarrow Formulas, Inc.,* No. 3:13-cv-82, 2013 WL 4048541 at *3, n. 4 (W.D. Ky. August 9, 2013), q*uoting Republic Bank & Trust Co. v. Bear Stearns & Co, Inc.* 683 F.3d 239, 247 (6th Cir. 2012). Accordingly, Kentucky law is applicable here. In *Scott v. Farmers State Bank*, 410 S.W.2d 717, 722 (Ky. 1966), the court said: "It is not necessary that the 'particularity' commended by CR 9.02 attain such detail as to recite each minute detail; it is enough to plead the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was obtained by the fraud."

Adkins' allegations in the Third Amended Complaint include the following: Shelter paid $500 to her mother in 2008 in exchange for an "Indemnifying Release (Minors)" and that no court approval was sought. DE 82-2, ¶ 7. Shelter's claims adjuster, Linda Yates, testified she was trained that minor settlements under $10,000 did not require court approval. *Id.* at ¶ 10. Kentucky law requires court approval of settlements involving minor children. *Id.* at 11. Yates believed the Release was binding and enforceable and extinguished Adkins' claims. *Id.* at ¶ 12. "The document entitled 'Indemnifying Release (Minors)' further purported to 'hold [Shelter] harmless for any claim for the minor or any other party resulting from the minor's injury in this accident, and to reimburse any loss, damage, or costs that any Releasee pays if any litigation arises from these injuries.'" *Id.* at ¶ 13. Yates' supervisor, Crystal Turner, testified that she understood court approval was discretionary and that execution of the Release "was not meant to preclude minors from seeking additional compensation from Shelter with regard to their personal injury claims." *Id.* at ¶ 15. When Adkins filed suit against Mason, Yates and Turner "refused to negotiate," citing the Release "as a bar to further recovery." *Id.* at ¶16. Shelter pled the Release as "extinguishing Plaintiff's personal injury claims" in the tort case, yet Adkins

7

settled her claim for $12,000. *Id.* at ¶ 17. Shelter produced documents for three years in the Kentucky branch indicating eighty-eight other claims involving minors were settled without court approval. *Id.* at ¶ 19. From 2003 to late 2009, Adkins is the only individual to seek additional compensation from Shelter after signing a Release. *Id.* at ¶ 21. Shelter's adjusters engaged in a coordinated scheme to deprive policy holders and third-party beneficiaries of policy proceeds and their rights under Kentucky law. *Id.* at ¶ 23. For a motion to dismiss, these allegations are all presumed true.

It is the opinion of this Court that these allegations are sufficiently particularized to state plausible claims of fraudulent misrepresentation of the effect of the Release and fraudulent omission of information regarding the availability of additional benefits, all while pursuing settlements in violation of Kentucky law. Accordingly, Counts IV and V will not be dismissed for a lack of particularity.

Next, Shelter argues that Adkins cannot prove fraud in the inducement because "she cannot prove that Shelter's alleged misrepresentations are material." DE 85 at p. 16. It further argues there is no evidence that Adjuster Yates said anything to induce signing the Release nor any evidence that she knew any statement she made was false. *Id.* Yet, Adkins pled that Yates was trained that no court approval was required for settlements under $10,000 and that Yates believed the Release extinguished personal injury claims of Adkins. DE 82-2 at ¶¶ 10, 11. Additionally, Yates and Turner refused to negotiate, citing the Release as a bar to further recovery. *Id.* at ¶ 16.

Shelter ignores the fact that the Release itself was a material misrepresentation because its plain language says it "fully settles and discharges all claims against the Releasees" and indemnifies Shelter if litigation is initiated. DE 82-4. Shelter now insists that is not true; it is only the parents' claim that is settled, not the minor's claim. See DE 85 at pp. 16-17. Thus, while Shelter's Claims Adjusting Guidelines stated the Release only settled the parents' claim, Shelter

8

issued a Release saying it discharges all claims and then asserted that Release as a bar to Adkins' claims against Mason.

Moreover, it is Shelter that Adkins alleges committed fraud, not Yates or Turner. It is Shelter's knowledge that is relevant. *See Spears v. Amazon.com.KYDC LLC,* No. 10-325, 2013 WL 556392 at *1 (E.D. Ky. Feb. 12, 2013). Yates and Turner were acting as Shelter's agents when they settled the claim and when they later refused to negotiate. Shelter knew the Release only bound the parent, not the minor, and that its statements in the Release and those of any of its agents regarding its binding effect on the minor were false.

Next, Shelter argues that Adkins cannot show detrimental reliance. DE 85 at p. 17. Shelter interprets Adkins' testimony to mean that she knew the Release was not binding. *Id.* However, Magistrate Judge Atkins concluded that her testimony also supported other conflicting views. DE 37 at 3, n. 1. Adkins alleged she relied on Shelter's misrepresentations. DE 82-2 at ¶ 41. Additionally, Adkins' mother testified that she spoke with Linda Yates who offered her $500 to "close off this case." DE 90, Ex. D, pp. 10-11.

Shelter argues Adkins cannot prove she was harmed by any alleged misrepresentation. De 85 at p. 18. Adkins testified that she had to endure three years of litigation and put her plans regarding school and employment on hold in order to obtain a fair settlement. DE 90 at p. 7. She also was denied PIP benefits as a result of the premature settlement and refusal to negotiate based on the Release. *Id.* Accordingly, Shelter's motion to dismiss Court IV, Fraud in the Inducement, will be denied.

Shelter also argues that Adkins' fraud by omission claim is not viable. To prevail on a claim of fraud by omission, a plaintiff must prove: "(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). A duty to disclose may arise "when a defendant has partially disclosed

9

material facts to the plaintiff but created the impression of full disclosure" or "where one party to a contract has superior knowledge and is relied upon to disclose same." *Id.*, citations omitted.

Shelter argues that Adkins failed to plead her claim with sufficient particularity. Specifically, Shelter says she "failed to plead precisely what was omitted, who should have made a representation, the manner in which the omission was misleading and what Shelter obtained as a consequence of the alleged fraud." Shelter relies for these requirements on *Carroll v. Fort James Corp.,* 470 F.3d 1171, 1174 (5th Cir. 2006). DE 85 at pp. 18-19. In *Carroll*, the plaintiff failed to show the existence of a duty to disclose under Mississippi law. *Id.* at 1174. Under Kentucky law, however, partial disclosure or superior knowledge can give rise to a duty to disclose. *Giddings*, 348 S.W.3d at 747.

Adkins alleges that Shelter concealed from her and her mother that Adkins could seek additional compensation from Shelter, despite the Release. DE 82-2 at ¶ 48. Thus, Shelter disclosed that the Release was binding, but concealed that it was binding only on Adkins' mother. Adkins further alleges that the failure to disclose induced signing the Release and delayed her seeking additional compensation. *Id.* at ¶ 50. Accordingly, the Court will not dismiss Count V, Fraud by Omission.

### 4. Allegation of Negligence/Gross Negligence (Count VI)

Shelter contends that the allegations of negligence and gross negligence are essentially bad faith claims that are subsumed by the UCSPA. DE 85 at p. 19. In *Blue Cross and Blue Shield of Kentucky, Inc. v. Whitaker*, 687 S.W.2d 557, 559 (Ky. Ct. App. 1985), the court said "that an action for bad faith, whether a first-party or a third-party situation, requires something more than mere negligence." Likewise, in *Gale v. Liberty Bell Agency, Inc.*, 911 F. Supp.2d 488, 497 (W. D. Ky. 2012), the court said: "Kentucky's standard is high…. Bad faith 'is not simply bad judgment, It is not merely negligence.'" These statements are all true regarding a claim of bad faith, but Shelter has cited no authority for its argument that the UCSPA, KRS 304.12-230, "preempts" all negligence claims. Unlike the UCC, the UCSPA is a single statute,

rather than a comprehensive code of law.  *See Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust*, ___ S.W.3d ___, 2014 WL 2894202 at *12 (Ky. June 19, 2014).  Absent authority that all third-party claims must be made under the UCSPA, the Court will not dismiss Count VI.

        5.        <u>Allegation of Negligent Misrepresentation (Count VII)</u>

Shelter attacks Adkins' claim of negligent misrepresentation as not having been plead with sufficient particularity under Rule 9(b).  Shelter relies for this argument on the allegations under Count VII, rather than the entire Third Amended Complaint.  DE 85 at pp. 21-23.  The particular allegations regarding the false representations are set forth above in this Court's discussion of the allegations of fraud.  As with the claim of fraud, Adkins has provided sufficient particularity to satisfy the requirements of Rule 9.  For example, the Release itself is an affirmative false statement by Shelter.

        6.        <u>Negligent Training and Supervision (Count VIII)</u>

In *Booker v. GTE.net LLC,* 350 F.3d 515 (6th Cir. 2003), the Sixth Circuit notes that under Kentucky law "an employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created." *Id.* at 517.  Shelter also cites *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840 (Ky. 2005) for providing "explicit instructions detailing how a claim for negligent training and supervision must be pled." DE 85 at p. 25.  Shelter then argues that Adkins "fails to identify a harmful employee." *Id.* at p. 26.  However, *Grand Aerie* says:  "as long as the complaint generally alleges an employer's negligence, it does not have to individually identify the employees upon whose negligence the employer's liability is based." *Grand Aerie*, 169 S.W.3d at 844.

Moreover, Adkins pled Adjuster Yates testified that her supervisors instructed her during training that settlements under the amount of $10,000 did not require court approval [DED 82-2 ¶ 10] and that her supervisor, Crystal Turner, testified that claims branches had discretion as to obtaining court approval [¶ 15].  Further, Adkins alleged that Turner and Yates refused to negotiate her claim relying on the Release as a bar to further recovery.  *Id.* ¶ 16.  Adkins further

11

alleged that Shelter's adjusters regularly make false representations and material omissions regarding the legal significance of the Release, the necessity of signing same, the ability to seek additional compensation and the requirement that settlements have court approval. *Id.* at ¶ 67.

There is no heightened pleading standard for negligent training and supervision. *Grand Aerie*, 169 S.W.3d at 844 ("It is not necessary to state a claim with technical precision under this rule [CR 8.01], as long as a complaint gives a defendant fair notice and identifies the claim."). Adkins' allegations give Shelter fair notice. Count VIII will not be dismissed.

### 7. Intentional Misrepresentation or Deceit (Count IX)

Shelter argues that "intentional misrepresentation and fraud have the same meaning under Kentucky common law," and that Adkins' claim of intentional misrepresentation should be dismissed for the same reasons argued in support of dismissing her fraud claim. DE 85 at p. 27, quoting *Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001). This Court concluded above that Adkins' fraud claims were viable. Her intentional misrepresentation claim is viable for the same reasons.

### 8. Intentional Infliction of Emotional Distress (Count X)

Shelter argues that its conduct, even if found to be intentional or reckless, is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." DE 85 at p. 28, quoting *Humana of Kentucky, Inc. V. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990). Shelter also questions any causal connection between its conduct and any alleged emotional distress. Finally, Shelter argues there is no evidence that any emotional distress suffered by Adkins was "severe" and that she admitted she had not sought any treatment for mental and emotional pain and suffering. DE 85 at pp. 29-30.

Adkins responds that such arguments are "premature prior to the close of discovery" and that she pled a causal connection. DE 90 at p. 13. The Court finds that the allegations for Count X are lacking. Paragraphs 74 and75 provide no factual support for Adkins' claim and are

simply conclusory allegations. "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Adkins' motion will be denied on Count X.

9. RICO (Count XI)

Adkins alleges that Shelter violated a portion of the RICO statute, 18 U.S.C. § 1962(b). DE 82-2 at ¶ 80; DE 90 at p. 13. That section provides:

> It shall be unlawful for any person through a pattern of racketeering activity … to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(b). To state a claim under Section 1962(b), a "plaintiff must plead facts that establish that the Defendants: (1) acquired or maintained (2) through a pattern of racketeering activity ...; (3) an interest in or control of an enterprise; and (4) engaged in, or the activities of which affect, interstate or foreign commerce." *Masterson v. Meade County Fiscal Court*, 489 F. Supp.2d 740, 750 (W.D. Ky. 2007), quoting *Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n.* 176 F.3d 315, 328 (6th Cir. 1999).

Shelter contends that Count IX fails to plead with sufficient particularity and fails to plead some elements at all. For example, Shelter argues that Adkins fails to plead a "pattern of racketeering activity." Acts constituting "racketeering activity" are called "predicate offenses" or "predicate acts." In *Frank v. D'Ambrosi*, 4 F.3d 1378 (6th Cir. 1993), the court made it clear that "[o]nly those acts itemized in 18 U.S.C. § 1961(1) can constitute predicate offenses for RICO violations." *Id.* at 1385. *See also Miller v. First Federal Savings Bank of Elizabethtown, Inc.*, No. 3:13cv206, 2013 WL 7155076 at *5 (E.D. Ky. Nov. 19, 2013) (same). The vast majority of listed offenses are federal crimes. The only state law offenses listed are felony crimes, such as "murder, kidnapping,

gambling, arson, robbery, bribery, extortion or dealing in obscene matter, or dealing in a controlled substance of listed chemical." 18 U.S.C. § 1961(1).

Adkins' allegation is that "Shelter's pattern of racketeering activity consisted of a minimum of 89 separate instances of fraud, including that of Plaintiff's case." DE 82-2 ¶ 78. The mere tort of state-law fraud, by itself without factual allegations of mail or wire fraud, does not satisfy the requirements for a RICO predicate offense. 18 U.S.C. § 1961(1).

Shelter further argues that Adkins has failed to allege an "enterprise" as required by RICO. Adkins alleged that "Shelter's concerted and predetermined conduct, which was implemented by and through its various claims adjusters against the citizens of Kentucky, constituted an 'enterprise'...." DE 82-2 ¶ 77. "Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In *United States v. Turkette*, 452 U.S. 576 (1981),[1] the court clarified:

> The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. ... The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.

*Id.* at 583. *See also Boyle v. United States*, 556 U.S. 938, 947 (2009), ("As we explained in *Turkette*, the existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.'").

Additionally, § 1962(b), on which Adkins relies, requires an enterprise acquired or maintained "through a pattern of racketeering activity" and which is engaged in or affects interstate or foreign commerce. 18 U.S.C. § 1962(b). There are no allegations of an "enterprise" being acquired through a pattern of racketeering activity, much less that interstate

---

[1] Adkins claims this case was "overruled by *Turkette v. United States*, 604 F. Supp. 667, 668 (D. Mass. 1985)." That is not true for several reasons. The subsequent District Court case is a ruling on a habeas petition following affirmance of Turkette's conviction by the United States Supreme Court.

commerce is affected. Because all the elements of a RICO offense are not alleged, Adkins' Count XI would not survive a motion to dismiss.

## III. CONCLUSION

**IT IS ORDERED** that Plaintiff's motion to file a Third Amended Complaint [DE 82] is **GRANTED IN PART** and **DENIED IN PART**. The motion to amend is **GRANTED** with respect to Counts IV (Fraud in the Inducement), V (Fraud by Omission), VI (Negligence/Gross Negligence), VII (Negligent Misrepresentation), VIII (Negligent Training and Supervision), and IX (Intentional Misrepresentation). The motion is **DENIED** as to Counts II, (Common Law Bad Faith), III (Violation of KCPA), X (Intentional Infliction of Emotional Distress), and XI (RICO). **Within five days of entry** of this Opinion and Order, Plaintiff shall file a Third Amended Complaint in conformity therewith.

All remaining deadlines, including the pretrial conference on October 23, 2014 and trial on November 18, 2014 are **SET ASIDE**. The parties shall arrange a status conference with Magistrate Judge Wier within three weeks to schedule any remaining discovery and reset other deadlines.

This August 26, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY