UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISIION
AT LEXINGTON

| | |
|---|---|
| **KAYLA ADKINS,** | **CIVIL ACTION NO. 5:12-173-KKC** |
| Plaintiff, | |
| V. | **OPINION AND ORDER** |
| **SHELTER MUTUAL INS. CO.,** | |
| Defendant. | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on the motions for summary judgment (DE 110 and 116) filed by both parties. The plaintiff, Kayla Adkins, was a minor at the time of her injuries, which were caused by an individual insured by the defendant Shelter Mutual Insurance Company. Because there are factual issues regarding whether Shelter obtained a settlement from Adkins' mother in an intentionally or recklessly unreasonable manner, both motions must be denied.

I.

On October 25, 2008, the plaintiff, Kayla Adkins, was in an automobile accident. She was 17 years old at the time. The accident was caused by another driver, Anthony Mason, who was insured by defendant Shelter.

Adkins' mother, Jessica Collins, filed a claim with Shelter for property damage to her car and that claim was settled on November 17, 2008. (DE 116-50, Notes.) Shelter adjuster Linda Yates noted on that same date that she was waiting on Adkins to return medical authorizations. (DE 116-50, Notes.) On December 11, 2008, Yates noted that Adkins still had not returned medical authorizations and she phoned Collins. (DE 116-3, Notes.)

Yates' notes reflect that Collins informed Yates that Adkins was "fine." Collins stated that Adkins had experienced only "bruising and soreness" and that she had not gone for any follow-up medical care. Yates informed Collins that Kayla Roe, the passenger in Adkins' car, had retained an attorney. Collins stated that Adkins was "only bruised and she is not pursing any claim." (DE 116-3, Notes.)

About a week later, Yates phoned Collins again and explained that Adkins was entitled to a bodily injury settlement from Shelter even though she was not pursuing a claim and offered her $500 to settle it. (DE 116-4, Notes.) Collins accepted and, in return, she signed a document provided by Shelter called "Indemnifying Release (Minors)." The release can be reasonably interpreted to release Shelter and Mason from all claims, including any claims Adkins herself may have, stating:

> [W]e, individually and as a parents, release [Mason and Shelter] from *any and all* claims, demands, damages, actions, causes of action, or suits *of whatever kind or nature*, including bodily injuries sustained by Kayla Adkins, a minor. . .or arising out of damages or direct or indirect loss we sustained from an accident on the 25th day of October, 2008. . . [W]e agree to hold [Mason and Shelter] harmless for any claim for the minor or any other party resulting from the minor's injury in this accident, and to reimburse any loss, damage, or costs that [Mason or Shelter] pays if any litigation arises from these injuries. This release fully settles and discharges *all claims* against [Mason and Shelter]. . . I/We have fully read, understand, and voluntarily accept this agreement to *fully and finally compromise all claims*, disputed or not, based on the injuries and damages from this accident.

(DE 82-4, Release) (emphasis added.)

Collins testified that, at the time she signed the release, Adkins "was not showing any health problems." (DE 116-5, Collins Dep. at 17.)

While the release can reasonably be interpreted to settle all claims against Shelter and Mason, Shelter's Casualty Claims Adjusting Guidelines state that it "releases the parent or guardians' claim but not the minor's claim." But, if the minor "should later pursue his or her injury claim, any amount paid in addition to the amount paid for this release could be claimed from the party signing this release. " (DE 121-1, Guidelines at CM-ECF p. 14.) In other words,

2

if the minor should assert her rights as an adult, the parent would ultimately have to pay what the minor is due.

No party sought court approval of the settlement. A Kentucky statute, KRS § 387.280, mandates court approval for certain settlements with minors but does not state which party must obtain it. *Lawson v. Dawson*, No. 2003-CA-00448-MR, 2004 WL 1909357 at *5 (Ky. App. 2004) ("Neither in the statutes or the case law is it stated on whom the burden rests to ensure that a settlement on behalf of a minor is correctly executed.")

On these motions, Adkins' agrees that the statute does not make clear which party should obtain court approval. (DE 118, Response at 13.) Shelter's position on these motions is that Collins, as Adkins' custodian, was the party who was required to obtain approval. (DE 116-1, Mem. at 20.) Regardless, "[t]he case law makes clear that any settlement on behalf of a minor without the approval of the court and appointment of a guardian is subject to collateral attack." *Lawson v. Dawson*, No. 2003-CA-448-MR, 2004 WL 1909357 at *5 (Ky. App. 2004) (discussing KRS §§ 387.280 and 387.125(6)).

Adkins turned 18 in April 2009. On October 26, 2009, she filed suit against Mason seeking additional compensation for her alleged injuries. Neither Adkins nor her attorney communicated with Shelter before filing the action. Adkins and Mason eventually settled that claim in January 2012 for $12,000.

In April 2012, Adkins filed this action against Shelter. In her second amended complaint, Adkins asserted two claims: a claim under Kentucky's Unfair Claims Settlement Practices Act ("UCSPA"), KRS § 304.12-230, and a common law bad faith claim. (DE 1-7, Second Amended Complaint.) Adkins has now filed a third amended complaint which adds claims for fraud in the inducement, fraud, negligence/gross negligence, negligent misrepresentation, negligent training and supervision, and intentional misrepresentation. She deleted the common law bad faith claim contained in the second amended complaint. The

3

parties then filed a second round of motions for summary judgment directed only at the added claims in the third amended complaint (DE 184, 185).

For this reason, the Court interprets the first round of motions for summary judgment currently under review to be directed at the UCSPA claim contained in the third amended complaint.

II.

In its motion for summary judgment, Shelter moves for judgment in its favor on Adkins' common law bad faith claim and her claim under UCSPA. Because the third amended complaint no longer asserts the common law bad faith claim, Shelter's motion for summary judgment on that claim will be denied as moot.

As to her UCSPA claim, in order to state a claim under KRS 304.12-230, Adkins "must meet a high threshold standard that requires evidence of 'intentional misconduct or reckless disregard of the rights of an insured or a claimant' by the insurance company that would support an award of punitive damages." *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 703 (6th Cir. 2012) (quoting *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky.1993)).

After meeting this initial showing, the plaintiff must establish that: (1) the insurer is obligated to pay the claim under the terms of the policy; (2) the insurer lacks a reasonable basis in law or fact for denying the claim; and (3) the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. *Id.* (quoting *Wittmer*, 864 S.W.2d at 890). *See also Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527, 532 (6th Cir. 2006) ("A single test under Kentucky law exists for the merits of bad-faith claims, whether . . . brought under common law or statute.")

Adkins argues that that Shelter paid her mother $500 without adequately investigating her injuries and failed to obtain court approval of the settlement as required. She argues that Shelter falsely represented that the release signed by her mother barred any

4

future claim by her as an adult. She submits evidence that this conduct extended beyond her. The evidence indicates that from 2008 to 2011, Shelter settled at least 94 other claims involving injuries to minors and that, in each such case, Shelter presented the minor's parent or guardian with a release containing the same representations as that signed by Collins. Adkins submits evidence that, of these minors, she is the only person who asserted a claim against Shelter after turning 18.

She alleges this amounted to a "coordinated and companywide scheme meant to deprive policy holders and/or third party beneficiaries of said policies, the full exercise of rights and benefits. . . ." (DE 129, Third Amended Complaint ¶ 30.)

As to the three requirements set forth in *Wittmer*, there is no dispute over the first. The wreck was caused by Mason, Shelter's insured, and Shelter was obligated to pay Adkins' claim under the terms of the policy.

As to the second *Wittmer* requirement – that Shelter lacked a reasonable basis in law or fact for denying the claim – Adkins does not literally meet this requirement. Shelter did not deny her claim. Adkins did not assert a claim against Mason until 2009 and Shelter settled that claim by paying her $12,000.

At least one court has dismissed a bad faith claim in similar circumstances on the basis that "[t]he Kentucky Supreme Court has held that absent a denial, there can be no damage and thus no actionable claim for bad faith. *See e.g., Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1997)." *Philadelphia Idem. Ins. Co. v. Youth Alive, Inc.* 857 F. Supp. 2d 647, 658 (W.D. Ky. 2012), *aff'd*, 732 F.3d 645 (6th Cir. 2013). The court determined "[a]s set forth in *Wittmer*, a 'denial' of a claim is a key prerequisite to establishing a prima facie cause of action for bad faith. 864 S.W.2d at 890." *Youth Alive, Inc.* 857 F. Supp. 2d at 658.

In *Youth Alive,* the insurer agreed to defend the insured and also settled all the claims against it by making payments to the third party claimants. The court held that "because

5

Kentucky law requires a 'denial' of a claim to support a bad faith cause of action, [the plaintiff's] bad faith claim must fail here, as it cannot prove that [the insurer] 'denied' its claim." *Id.* at 659.

A later decision by the Sixth Circuit indicates otherwise. In *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697 (6th Cir. 2012), the Sixth Circuit recognized the three requirements for an UCSPA claim set forth in *Wittmer*. *Id.* at 703. The court did not specifically address whether a bad faith claim requires the denial of a claim but it did determine that summary judgment for the insured on a third party bad faith claim was improper even though, like here, the insurer and the third party claimant had settled the third party claim. After noting the three UCSPA requirements, including that the insurer lacked a reasonable basis for denying a claim, the court quoted the following passage from *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368 (Ky. 2000):

> The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.

*Phelps*, 736 F.3d at 704 (quoting *Farmland*, 36 S.W.3d at 376).

There is sufficient evidence here that Shelter acted unreasonably in evaluating and processing Adkins' claim. There is no dispute that soon after Shelter became aware of Adkin's potential claim, Shelter provided her mother with a release that can at least be reasonably interpreted to settle all claims against Mason and Shelter, including those that Adkins' may have. Shelter adjuster Yates interpreted it this way. And in its pleadings on these motions, Shelter concedes that Yates was not the only adjuster that held this "mistaken belief." Other casualty adjusters and at least one of Shelter's branch claims supervisors believed the same thing. (DE 121, Response at 3.) Likewise, Shelter itself has interpreted the release as a complete bar to Adkins' claims at various times during this litigation.

6

There is also no dispute that this is incorrect. Shelter now takes the position that the release does not waive the minor's claims. Further, both parties now agree that, without court approval, the release could not waive the minor's claims.

Further, Shelter did not obtain court approval of the settlement. Shelter argues that it did not have to but the evidence shows that, in at least one prior instance, Shelter did assist a claimant in obtaining court approval of a settlement with a minor. (DE 118, Response at 15.) Shelter currently obtains court approval for all settlements involving minors. Because Shelter paid Collins $500 in 2008 but a year later paid Adkins $12,000 to settle her claim, a reasonable juror could infer that Shelter intentionally avoided court scrutiny of the settlement in this case.

As to the third bad-faith requirement – that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed – again, Adkins' claim does not fit neatly into this requirement because her claim was never denied. In *Farmland*, the case *Phelps* relies on, the insurer was also alleged to have made a misrepresentation to the insured. The Kentucky Supreme Court indicated that the issue on this third prong of the bad faith analysis is whether there is evidence that the "insurer either knew that there was no reasonable basis in fact for making the misrepresentation or acted with reckless disregard thereof." *Farmland,* 36 S.W.3d at 377.

There is sufficient evidence that Shelter as a company was aware that the release it provided to an injured minor's parent did not actually release the minor's claims or at least sufficient evidence that Shelter acted with reckless disregard for what the release represented. Its claims adjuster guidelines specifically state the release does not bar a minor from bringing claims upon reaching majority age. This is the position Shelter takes now. There is also sufficient evidence, however, that Shelter was aware that the release could be interpreted to release all claims. Its own employees interpreted it this way.

7

Further, even if Shelter was not the party that was required to obtain court approval of its settlements with minors, a reasonable juror could infer that its failure to see that such approval was obtained in some cases but not others indicates that Shelter intended to avoid court oversight in certain cases.

As to the threshold inquiry, the Sixth Circuit has recognized that "[o]ddly, the second and third elements of this [three-part] test depend on evidence similar to the threshold inquiry." *Phelps*, 736 F.3d at 704. As discussed, a reasonable juror could infer that, with the release, Shelter intended to deter minors from asserting any rights upon reaching majority age or that Shelter at least recklessly disregarded how the release would affect third party claimants. A reasonable juror could also infer that Shelter intentionally or recklessly avoided court scrutiny of some of its settlements with minors.

Of course, a reasonable juror could also determine that Shelter's use of the release was reasonable or that it inadvertently included language in the release indicating that Adkins was barred from bringing claims against it. Likewise, a reasonable juror could determine that Shelter's failure to ensure that the 2008 settlement was approved by the Court was reasonable or inadvertent and had nothing to do with the terms of the settlement.

For all these reasons, there are factual issues regarding whether Shelter failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Adkins' claim. *See* KRS § 304.12-30(6).

Shelter argues that Adkins has presented no evidence of damages. With her third amended complaint, Adkins seeks damages for "inconvenience, physical injuries, emotional pain and suffering, worry, attorney's fees and costs, and financial distress." (DE 129, Complaint at p. 14.) The Court questions Adkins' evidence on damages. After all, even if Shelter is found to have misrepresented the effect of the release or to have unreasonably

8

evaluated her damages, she did file a claim very soon after turning 18 and she did agree to take $12,000 from Shelter to settle it.

In response to the motion for summary judgment, Adkins argues that Shelter's actions in causing her to believe that she was barred from bringing a personal injury claim caused her emotional distress. As evidence of this, she cites only her own deposition testimony and specifically to her response when asked by her attorney if Shelter's actions in "making you think that you weren't going to have an opportunity to pursue your claim because of this $500, has it caused you emotional distress." Adkins simply responded, "yeah." (DE 39, Adkins Dep. at 36.)

Entitlement to damages for mental anguish in a bad faith case requires "either direct or circumstantial evidence from which the jury could infer that anxiety or mental anguish in fact occurred. The proof must be clear and satisfactory; and evidence based on conjecture will not support a recovery for such damages." *Glass*, 996 S.W. 2d at 454. While Adkins' testimony may not constitute clear evidence of emotional distress to a jury, it is sufficient to survive summary judgment. *See Indiana Insurance Co. v. Demetre*, No. 2013-CA-338-MR, 2015 WL 393041, at *13 (Ky. App. 2015) (holding that emotional distress may be proved by plaintiff's testimony alone on an USCPA claim.)

As evidence of damages, Adkins also cites her attorney's deposition testimony that Shelter had "sabotaged her care by this premature settlement and the effects that it had, both on her being able to use PIP and her – the chilling effect on her mother having her seek care." (DE 90-5, Fore Dep. at 33.) Adkins argues that this is evidence that "Shelter's premature settlement and subsequent refusal to negotiate on the basis of its release resulted in GEICO's denial of PIP benefits." (DE 118, Response at 22.) Attorney Fore's testimony alone is not evidence of why GEICO denied Adkins' PIP claim.

III.

For all these reasons, the Court hereby ORDERS as follows:

1) Shelter's motion for summary judgment (DE 116) is DENIED as to Adkin's bad faith claim under Kentucky's Unfair Claims Settlement Practices Act ("UCSPA"), KRS § 304.12-230, and that claim is DISMISSED and the motion is denied as moot as to Adkins' common law bad faith claim.

2) Adkins' motion for partial summary judgment (DE 110) is DENIED.

Dated March 25, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY