UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **KAYLA ADKINS,**<br><br>   **Plaintiff,**<br><br>**V.**<br><br>**SHELTER MUTUAL INS. CO.,**<br><br>   **Defendant.** | **CIVIL ACTION NO. 5:12-173-KKC**<br><br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motions for summary judgment (DE 184 and 185) filed by both parties. By prior opinion (DE 198), this Court determined that the plaintiff Kayla Adkins' bad faith claim against the defendant Shelter Mutual Ins. Co. must be tried before a jury. On the motions currently before the Court, the parties each ask for judgment in their favor on Adkins' various claims of negligence and fraud. For the following reasons, Adkins has failed to present sufficient evidence to support these claims and they must be dismissed.

   **I.   Background**

On October 25, 2008, the plaintiff, Kayla Adkins, was in an automobile accident. She was 17 years old at the time. The accident was caused by another driver, Anthony Mason, who was insured by defendant Shelter.

Adkins' mother, Jessica Collins, filed a claim with Shelter for property damage to her car and that claim was settled on November 17, 2008. (DE 116-50, Notes.) Shelter adjuster Linda Yates noted on that same date that she was waiting on Adkins to return medical authorizations. (DE 116-50, Notes.) On December 11, 2008, Yates noted that Adkins still had not returned medical authorizations and she phoned Collins. (DE 116-3, Notes.)

Yates' notes reflect that Collins informed Yates that Adkins was "fine." Collins stated that Adkins had experienced only "bruising and soreness" and that she had not gone for any follow-up medical care. Yates informed Collins that Kayla Roe, the passenger in Adkins' car, had retained an attorney. Collins stated that Adkins was "only bruised and she is not pursuing any claim." (DE 116-3, Notes.)

About a week later, Yates phoned Collins again and explained that Adkins was entitled to a bodily injury settlement from Shelter even though she was not pursuing a claim and offered her $500. (DE 116-4, Notes.) Collins accepted and, in return, she signed a document provided by Shelter called "Indemnifying Release (Minors)." The release can be reasonably interpreted to release Shelter and Mason from all claims, including any claims Adkins herself may have, stating:

> [W]e, individually and as a parents, release [Mason and Shelter] from *any and all* claims, demands, damages, actions, causes of action, or suits *of whatever kind or nature*, including bodily injuries sustained by Kayla Adkins, a minor. . .or arising out of damages or direct or indirect loss we sustained from an accident on the 25th day of October, 2008. . . [W]e agree to hold [Mason and Shelter] harmless for any claim *for the minor or any other party* resulting from the minor's injury in this accident, and to reimburse any loss, damage, or costs that [Mason or Shelter] pays if any litigation arises from these injuries. This release fully settles and discharges *all claims* against [Mason and Shelter]. . . I/We have fully read, understand, and voluntarily accept this agreement to *fully and finally compromise all claims*, disputed or not, based on the injuries and damages from this accident.

(DE 82-4, Release) (emphasis added.)

Collins testified that, at the time she signed the release, Adkins "was not showing any health problems." (DE 116-5, Collins Dep. at 17.)

While the release can reasonably be interpreted to settle all claims against Shelter and Mason, Shelter's Casualty Claims Adjusting Guidelines state that it "releases the parent or guardians' claim but not the minor's claim." The guidelines continue, however, that if the minor "should later pursue his or her injury claim, any amount paid in addition to the amount paid for this release could be claimed from the party signing this release." (DE 121-1,

Guidelines at CM-ECF p. 14.) In other words, if the minor should assert her rights as an adult, the parent would ultimately have to pay what the minor is due.

No party sought court approval of the settlement. A Kentucky statute, KRS § 387.280, mandates court approval for certain settlements with minors but does not state which party must obtain it. *Lawson v. Dawson*, No. 2003-CA-00448-MR, 2004 WL 1909357 at *5 (Ky. App. 2004) ("Neither in the statutes or the case law is it stated on whom the burden rests to ensure that a settlement on behalf of a minor is correctly executed.")

Adkins agrees that the statute does not make clear which party should obtain court approval. (DE 118, Response at 13.) Shelter's position is that Collins, as Adkins' custodian, was the party who was required to obtain approval. (DE 116-1, Mem. at 20.) Regardless, "[t]he case law makes clear that any settlement on behalf of a minor without the approval of the court and appointment of a guardian is subject to collateral attack." *Lawson*, 2004 WL 1909357 at *5 (discussing KRS §§ 387.280 and 387.125(6)).

Adkins turned 18 in April 2009. On October 26, 2009, she filed suit against Mason – Shelter's insured – seeking additional compensation for her alleged injuries. Adkins and Mason eventually settled that claim in January 2012 for $12,000. Adkins testified that the settlement adequately compensated her for her injuries. (DE 39, Adkins Dep. at 24-25.)

In April 2012, Adkins filed this action against Shelter. In her second amended complaint, Adkins asserted two claims: a claim under Kentucky's Unfair Claims Settlement Practices Act ("UCSPA"), KRS § 304.12-230, and a common law bad faith claim. (DE 1-7, Second Amended Complaint.) Adkins then filed a third amended complaint which added claims for fraud in the inducement, fraud, negligence, gross negligence, negligent misrepresentation, negligent training and supervision, and intentional misrepresentation. She deleted the common law bad faith claim contained in the second amended complaint.

3

Adkins argues that that Shelter wrongfully paid her mother $500 without adequately investigating her injuries and that it failed to obtain court approval of the settlement as required. She further argues that Shelter falsely represented that the release signed by her mother barred any future claim by her as an adult. She submits evidence that this conduct extended beyond her. The evidence indicates that from 2008 to 2011, Shelter settled at least 94 other claims involving injuries to minors and that, in each such case, Shelter presented the minor's parent or guardian with a release containing the same representations as that signed by Collins. Adkins submits evidence that, of these minors, she is the only person who asserted a claim against Shelter after turning 18.

 She alleges this amounted to a "coordinated and companywide scheme meant to deprive policy holders and/or third party beneficiaries of said policies, the full exercise of rights and benefits. . . ." (DE 129, Third Amended Complaint ¶ 30.)

The parties previously moved for summary judgment on the UCSPA claim contained in the third amended complaint. The Court denied both motions. The parties now move for summary judgment on the negligence and fraud claims.

**II. Analysis**

For her fraud and negligence claims, Adkins must show that she was damaged by Shelter's alleged misrepresentation that she had waived all claims against Mason or by Shelter's alleged omissions that caused her to believe that she had waived all such claims. This is difficult for Adkins because she did eventually file suit against Mason and, further, Shelter did pay her $12,000 to settle it. She does not now assert any claim for medical expenses and she testified that the settlement adequately compensated her for her injuries. (DE 39, Adkins Dep. at 24-25.)

Instead, Adkins asserts that she suffered emotional distress during the time period that she believed she had waived all claims against Mason. Adkins testified that she began

4

considering filing her own claim against Mason in February 2009, a couple of months after her mother signed the release. (DE 39, Adkins' Dep. at 18.) She asserts in these motions, however, that, until she retained Fore to represent her in September 2009, she believed she had waived her right to file such a claim. For purposes of this opinion, the Court assumes that, from December 2008 until September 2009, Adkins believed she had waived all claims against Mason.

Adkins also asserts that Shelter's misrepresentations caused her to incur legal fees and expenses in her lawsuits against Mason and her own insurer GEICO.

### A. Adkins' claims for emotional distress resulting from Shelter's alleged negligence must be dismissed.

As to evidence of her emotional distress, Adkins cites only her own deposition testimony and specifically to her response when asked by her attorney if Shelter's actions in "making you think that you weren't going to have an opportunity to pursue your claim because of this $500, has it caused you emotional distress?" Adkins simply responded, "yeah." (DE 39, Adkins Dep. at 36.)

In the current motions, Shelter argues that Adkins' own testimony is not sufficient evidence of emotional distress. It argues that Adkins must submit scientific or medical evidence of such damages. In support of its argument, Shelter cites *Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012). In that case, the Kentucky Supreme Court held that a plaintiff asserting a negligence claim can recover damages for emotional distress only where the emotional distress is "severe" or "serious" and supported by expert medical or scientific proof. *Id*. at 17-18.

Adkins argues that *Osborne* does not apply to all negligence claims where the plaintiff seeks damages for emotional distress but instead applies only specifically to the tort of negligent infliction of emotion distress (NIED). This cannot be correct. *Osborne* did not involve an NIED claim. The plaintiff in that case asserted negligence and negligence per se

5

claims against a pilot who crashed a plane into the plaintiff's house. (DE 197-4, Osbourne Complaint.) The plaintiff sought to recover damages for emotional distress even though she had experienced no physical contact or injury.

Such damages could not have been recovered under the Kentucky Supreme Court's long-held "impact rule." Pursuant to that rule, a plaintiff pursuing a negligence claim could not recover damages for emotional distress unless there was also "physical contact or injury." *Osborne*, 399 S.W. 3d at 14. In *Osborne*, however, the Kentucky Supreme Court determined the rule was no longer necessary.

The court noted that the rule had been adopted because emotional distress "is possibly trivial and simply too speculative and difficult to measure unless it is directly linked to and caused by a physical harm." *Id.* (quoting *Steel Technologies, Inc. v. Congleton*, 234 S.W. 3d 920, 929 (Ky. 2007)) (brackets omitted). The courts remained committed to the impact rule, believing that the physical harm requirement was necessary to prevent a flood of fraudulent negligence claims. *Id.* at 15.

In *Osborne*, however, the court determined that these concerns could be addressed by some means other than requiring physical impact. Noting that "medical science and treatment have vastly improved" since the time the rule was adopted, the court held that a plaintiff asserting a negligence claim should recover for emotional distress only when it is "severe" or "serious," meaning that a "reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case." *Id.* at 17. "Distress that does not significantly affect the plaintiff[']s everyday life or require significant treatment will not suffice." *Id.* The court further held that "a plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment." *Id.* at 17-18.

6

The impact rule applied to all "negligence cases." *Wilhoite v. Cobb*, 761 S.W.2d 625, 626 (Ky. App. 1988) (stating "[t]he long-standing rule in this jurisdiction is that in negligence cases there can be no recovery for fright, shock, or mental anguish which is unaccompanied by physical contact or injury."); *Deutsch v. Shein*, 597 S.W.2d 141, 145-46 (Ky. 1980)) (stating with regard to a negligence claim that "[i]t is well established in this jurisdiction that 'an action will not lie for fright, shock or mental anguish which is unaccompanied by physical contact or injury.'"); *Louisville & N.R. Co. v. Brown*, 106 S.W. 795, 798 (Ky. 1908) ("Damages cannot be recovered for mental suffering alone in an action for personal injuries based on negligence, unaccompanied by some direct contemporaneous injury to the person." ); *Sutton v. Great Lakes Greyhound* Lines, 51 F. Supp. 715, 716 (W.D. Ky. 1943) (recognizing "the well settled rule in Kentucky that. . . there can be no recovery for mental pain and suffering resulting from the negligent act of another unaccompanied by any physical or bodily injury.")

Thus, in abrogating the rule, the Kentucky Supreme Court adopted new evidentiary rules that apply in all negligence cases. *See Keaton v. G.C. Williams Funeral Home*, 436 S.W.3d 538, 543-44 (Ky. App. 2013) (applying *Osborne* to negligence claim); *Powell v. Tosh*, No. 5:09-CV-121, 2013 WL 1878934, at *3-4 (W.D. Ky. 2013) (applying *Osborne* to negligence and negligence per se claims); *Farmer v. Dixon Elec. Systems and Contracting, Inc.*, No. 10-326-ART, 2013 WL 2405547, at *9 (E.D. Ky. 2013) (applying *Osborne* to negligence and negligent training and supervision claims).

Pursuant to *Osborne*, Adkins' claim for emotional distress resulting from Shelter's alleged negligence (negligence, negligent misrepresentation and negligent training and supervision) must be dismissed.

**B. Adkins' fraud and negligence claims must be dismissed in their entirety because there is no evidence that Adkins' alleged misrepresentations caused her to suffer pecuniary losses.**

As to Adkins' fraud claims, Kentucky law requires a plaintiff asserting fraud to prove that she suffered an "actual pecuniary loss" caused by the alleged fraud. *Stevens v. St. Elizabeth Medical Center, Inc.*, 533 F. App'x 624, 632-33 (6th Cir. 2013) (quoting *Stahl v. St. Elizabeth Medical Center*, 948 S.W.2d 419, 423 (Ky. App. 1997); *Oliver v. J.J.B. Hilliard, W.L. Lyons, Inc.*, No. 2010-CA-1138, 2013 WL 762593, at *3 (Ky. App. 2013).

For pecuniary losses, Adkins alleges that Shelter's conduct caused her to incur legal fees and expenses in lawsuits against both Mason and GEICO, her insurer. (DE 194, Response at 6-8, 18.)

GEICO paid Adkins PIP benefits for medical services rendered through April 2009. (DE 197-1, GEICO PIP Ledger.) It appears that GEICO did not pay any additional benefits until after Adkins' attorney Fore filed suit against it in December 2010. (DE 194, Response at 5.) Again, Adkins does not now assert a claim for medical expenses. Instead, she asserts that Shelter's misrepresentations to her that she had waived her claim against Mason somehow caused GEICO to deny her claim for PIP benefits which forced her to sue GEICO to obtain them.

But the assertion that any conduct by Shelter caused GEICO to deny Adkins' claim for PIP benefits is refuted by the only evidence on the issue. GEICO denied Adkins' claim for further PIP benefits not because of any misrepresentation by Shelter, but instead because its own review of the claim determined that the additional medical expenses were not reasonable or necessary.

Shelter has submitted GEICO's PIP ledger stating that it paid Adkins for medical treatment received through April 17, 2009. (DE 197-1, GEICO PIP Ledger.) When attorney Fore contacted GEICO in September 2009 requesting its record of PIP benefits paid to Adkins

8

(DE 193-5, Fore letter), GEICO sent him its PIP ledger and an application for additional benefits. (DE 193-6, GEICO Oct. 2, 2009 letter.) After Fore submitted additional claims, GEICO asked Dr. Brad Chayet to review them. Dr. Chayet reported that any medical care that Adkins received beyond six weeks after the accident would not be reasonable or necessary:

> Based on the documentation provided, Ms. Adkins was involved in a motor vehicle accident on 10/25/08. . . Based on the documentation provided, at most, the patient experienced some minor soft tissue complaints and the cervical, thoracic, and lumbar spine with possibly a very minor contusion of the right knee that resolved. Appropriate treatment would have included approximately four to six weeks of physical therapy or chiropractic, at which time, within all reasonable medical probability, the patient should have been placed at the conclusion of care. Based on the documentation provided, any treatment provided after about six weeks would not be reasonable, related or medically necessary.

(DE 116-20, Chayet report at CM-ECF pp 3-4.)

By letter dated February 5, 2010, GEICO informed Adkins of Dr. Chayet's opinion that medical treatment beyond December 2008 was not related to the accident or necessary. GEICO stated that it would, therefore, be unable to pay for any medical treatment beyond that date. (DE 116-19.)

No reasonable juror could conclude that GEICO ceased paying benefits because of any conduct by Shelter. In fact, attorney Fore – who remains Adkins' counsel of record in this action – acknowledged in an April 5, 2010 letter to GEICO that GEICO had denied coverage on the basis of Dr. Chayet's opinion. (DE 193-8, April 5, 2010 Fore letter to GEICO.)

In her response to Shelter's current motion for summary judgment, Adkins also claims that Shelter's fraudulent actions caused her to incur legal fees and expenses in her lawsuit against Mason. But, again there is no evidence that Shelter's allegedly fraudulent conduct caused her to incur these amounts.

Adkins alleges that Shelter forced her to file suit against Mason because, after she reached majority age and asked Shelter to cover additional medical expenses, Shelter refused

9

to pay her claim and continued to misrepresent to her that her claim had been released. But there is no evidence that Shelter refused to pay Adkins' claim – on the basis of the release or any other basis – before she filed suit against Mason. In fact, there is no evidence of any communication between Adkins and Shelter at all between the time that Collins signed the release and the date Adkins filed suit against Mason. Nor is there is any other evidence from which a juror could conclude that Shelter's actions forced Adkins to file suit against Mason.

As to Shelter's conduct after Adkins filed suit, Shelter's counsel did plead the affirmative defenses of "accord and satisfaction," "doctrine of release," and the "doctrine of payment," (DE 82-5, Tort Action Answer). These are affirmative defenses that must be pleaded in an answer or they may be waived under Kentucky Rule of Civil Procedure 8.03. *See Vogler v. Salem Primative Baptist Church*, 415 S.W.2d 72, 74 (Ky. 1967). There is no evidence that the inclusion of these defenses in Shelter's answer delayed the litigation or otherwise caused Adkins to incur legal expenses she would not have otherwise incurred after filing the tort action.

Adkins points out that four days after the suit was filed – October 30, 2009 – Shelter adjuster Yates spoke with attorney Fore's receptionist and left a message that Adkins' claim was settled in December 2008 when Adkins' mother signed the release. (DE 116-13, Yates notes.) On November 5, 2009, attorney Fore called Yates and explained that any such settlement required court approval. (DE 116-13, Yates Notes). Yates stated she would discuss the matter with Shelter's litigation department. The evidence shows that this was the extent of the conversations about the release after Adkins filed suit against Mason. There is no evidence from which a juror could conclude that these conversations caused Adkins to incur legal expenses she would not have otherwise incurred after filing the lawsuit.

The day after Fore and Yates discussed the release – November 6, 2009 – attorney Fore sent a letter to Shelter demanding $50,000. (DE 116-15, Fore Letter.) From there, the evidence

10

shows that the parties engaged in discovery regarding the extent of Adkins' medical claims and also engaged in mediation. But between the date of Fore's letter demanding $50,000 and the parties' eventual settlement for $12,000, there is no evidence that Shelter asserted the release as a defense to Adkins' claims or that the parties engaged in any discussion about the release at all. It is true that the parties did not reach a settlement until January 2012. But there is no evidence from which any juror could conclude that the delay was in any way due to Shelter misrepresenting the effect of the release.

In response to Shelter's motion for summary judgment, Adkins mentions "transportation difficulties" and "school postponement" when discussing her pecuniary losses. (DE 194, Response at 18.) But neither in her response nor in her pleadings on her own motion for summary judgment does she do anything more than mention these in passing.  She cites to no evidence that would prove the existence or amount of any such damages.

Because there is no evidence from which any juror could conclude that Shelter's allegedly fraudulent conduct caused GEICO to deny Adkins' PIP benefits or that Shelter's conduct caused Adkins to suffer legal fees or expenses or any other pecuniary loss, her fraud claims (fraud in the inducement, fraud by omission, and intentional misrepresentation) must be dismissed.

Likewise, there is no evidence from which any juror could conclude that Shelter's allegedly negligent conduct caused these damages. As already discussed, Adkins has also failed to present sufficient evidence that Shelter's allegedly negligent conduct caused her to suffer emotional distress.  Accordingly, her negligence claims (negligence, negligent training and supervision, and negligent misrepresentation) must also be dismissed in their entirety.

**C. Adkins' gross negligence claim must be dismissed because she presents no argument or evidence that Shelter wantonly or recklessly disregarded the safety of others.**

A plaintiff asserting gross negligence must prove that the defendant wantonly or recklessly disregarded the "lives, safety, or property of others." *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 51–52 (Ky.2003). In her response to Shelter's motion for summary judgment, Adkins argues that, with its actions, Shelter disregarded her safety. (DE 194, Response at 26.)

In order to avoid summary judgment on her gross negligence claim, Adkins must produce evidence of a "conscious and voluntary act or omission which is likely to result in grave injury when in face of clear and present danger" of which Shelter was aware. *Sparks v. Re/Max Allstar Realty*, 55 S.W.3d 343, 348 (Ky. App. 2000). The Supreme Court of Kentucky has stated that to show gross negligence, "there must be an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or willful." *City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky.2001).

While Shelter's actions may constitute "bad faith" in handling third-party claims, no reasonable juror could conclude they were likely to result in a "grave injury" to Adkins' safety. As discussed, Adkins' sole evidence that she suffered any injury of any kind is her own deposition testimony indicating that she suffered emotional distress during the time period that she believed she was not able to assert a claim against Mason. There is no evidence that she sought medical treatment for any such distress.

This is not sufficient evidence from which a jury could find that Shelter's actions were likely to result in a "grave injury" to Adkins' emotional well-being.

D. **There is no evidence from which a juror could conclude that Adkins acted in reliance on Shelter's alleged misrepresentations or omissions.**

Further, Adkins' claims of negligent misrepresentation, fraud by misrepresentation, fraud in the inducement, and fraud by omission, each require that Adkins show that she acted in reliance on Shelter's misrepresentations or that she was induced to act by Shelter's omissions. *Giddings & Lewis, Inc. v. Industrial Risk* Insurers, 348 S.W.3d 729, 744-45, 747 (Ky. 2011); *Bear, Inc. v.* Smith, 303 S.W.3d 137, 142 (Ky. App. 2010). Adkins alleges that Shelter misrepresented that she had waived all claims against Mason or failed to tell her that she could still maintain a claim against him, but she does not allege that she took any action in reliance on that misrepresentation or omission.

Adkins turned 18 in April 2009. She testified that, by February 2009, she was already considering filing a claim against Mason. (DE 39, Adkins Dep. at 18-19.) By at least September of that year, she had retained Fore to represent her. (DE 140, Fore Dep. at 11.) She filed suit against Mason on October 26, 2009 and settled that claim in January 2012.

In response to Shelter's motion for summary judgment, Adkins does not allege any reliance on Shelter's alleged misrepresentation or that Shelter's conduct induced her to act in some way to her detriment. (DE 194, Response at 26-30.) Instead, she attempts only to establish that she did, in fact, believe that she had waived all claims against Mason until she retained Fore. For purposes of this opinion, the Court assumes that is true. But Adkins must still allege some action she took in reliance on that belief that resulted in an injury to her. She does not do so and, accordingly, her fraud and negligent misrepresentation claims must be dismissed.

III. **Conclusion**

This matter remains set for trial on Adkins' claim that Shelter acted in bad faith in handling her claim. For the reasons discussed in this opinion, however, Adkins' fraud and negligence claims must be dismissed.

13

Accordingly, the Court hereby ORDERS as follows:

1) Shelter's motion for summary judgment (DE 185) on Adkins' claims for fraud in the inducement, fraud by omission, negligence, gross negligence, negligent misrepresentation, negligent training and supervision, and intentional misrepresentation is GRANTED and those claims are hereby DISMISSED; and

2) Adkins' motion for summary judgment on these claims (DE 184) is DENIED;

3) The Court further hereby ORDERS that Shelter's motion (DE 191) for leave to file an addendum to its memorandum in support of its motion for summary judgment is GRANTED and the Clerk of the Court is DIRECTED to attach the corrected page 25 (DE 191-1) to the memorandum in support of Shelter's motion for summary judgment (DE 185-1).

Dated July 28, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY