UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **KAYLA ADKINS,**         Plaintiff, | **CIVIL ACTION NO. 5:12-173-KKC** |
| V. | **OPINION AND ORDER** |
| **SHELTER MUTUAL INS. CO.,**         Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on various motions filed by the parties in anticipation of the trial of this matter. The plaintiff Kayla Adkins asserts a statutory bad faith claim against defendant Shelter Mutual Ins. Co. The matter is set for trial on August 17, 2015.

I.   Background

On October 25, 2008, Adkins, was in an automobile accident. She was 17 years old at the time. The accident was caused by another driver, Anthony Mason, who was insured by defendant Shelter.

Adkins' mother, Jessica Collins, filed a claim with Shelter for property damage to her car and that claim was settled on November 17, 2008. (DE 116-50, Notes.) Shelter adjuster Linda Yates noted on that same date that she was waiting on Adkins to return medical authorizations. (DE 116-50, Notes.) On December 11, 2008, Yates noted that Adkins still had not returned medical authorizations and she phoned Collins. (DE 116-3, Notes.)

Yates' notes reflect that Collins informed Yates that Adkins was "fine." Collins stated that Adkins had experienced only "bruising and soreness" and that she had not gone for any follow-up medical care. Yates informed Collins that Kayla Roe, the passenger in Adkins' car,

had retained an attorney. Collins stated that Adkins was "only bruised and she is not pursuing any claim." (DE 116-3, Notes.)

About a week later, Yates phoned Collins again and explained that Adkins was entitled to a bodily injury settlement from Shelter even though she was not pursuing a claim and offered her $500. (DE 116-4, Notes.) Collins accepted and, in return, she signed a document provided by Shelter called "Indemnifying Release (Minors)." The release can be reasonably interpreted to release Shelter and Mason from all claims, including any claims Adkins herself may have, stating:

> [W]e, individually and as a parents, release [Mason and Shelter] from *any and all* claims, demands, damages, actions, causes of action, or suits *of whatever kind or nature*, including bodily injuries sustained by Kayla Adkins, a minor. . .or arising out of damages or direct or indirect loss we sustained from an accident on the 25th day of October, 2008. . . [W]e agree to hold [Mason and Shelter] harmless for any claim *for the minor or any other party* resulting from the minor's injury in this accident, and to reimburse any loss, damage, or costs that [Mason or Shelter] pays if any litigation arises from these injuries. This release fully settles and discharges *all claims* against [Mason and Shelter]. . . I/We have fully read, understand, and voluntarily accept this agreement to *fully and finally compromise all claims*, disputed or not, based on the injuries and damages from this accident.

(DE 82-4, Release) (emphasis added.)

Collins testified that, at the time she signed the release, Adkins "was not showing any health problems." (DE 116-5, Collins Dep. at 17.)

While the release can reasonably be interpreted to settle all claims against Shelter and Mason, Shelter's Casualty Claims Adjusting Guidelines state that it "releases the parent or guardians' claim but not the minor's claim." The guidelines continue, however, that if the minor "should later pursue his or her injury claim, any amount paid in addition to the amount paid for this release could be claimed from the party signing this release." (DE 121-1, Guidelines at CM-ECF p. 14.) In other words, if the minor should assert her rights as an adult, the parent would ultimately have to pay what the minor is due.

No party sought court approval of the settlement. A Kentucky statute, KRS § 387.280, mandates court approval for certain settlements with minors but does not state which party must obtain it. *Lawson v. Dawson*, No. 2003-CA-00448-MR, 2004 WL 1909357 at *5 (Ky. App. 2004) ("Neither in the statutes or the case law is it stated on whom the burden rests to ensure that a settlement on behalf of a minor is correctly executed.")

Adkins agrees that the statute does not make clear which party should obtain court approval. (DE 118, Response at 13.) Shelter's position is that Collins, as Adkins' custodian, was the party who was required to obtain approval. (DE 116-1, Mem. at 20.) Regardless, "[t]he case law makes clear that any settlement on behalf of a minor without the approval of the court and appointment of a guardian is subject to collateral attack." *Lawson*, 2004 WL 1909357 at *5 (discussing KRS §§ 387.280 and 387.125(6)).

Adkins turned 18 in April 2009. On October 26, 2009, she filed suit against Mason – Shelter's insured – seeking additional compensation for her alleged injuries. Adkins and Mason eventually settled that claim in January 2012 for $12,000. Adkins testified that the settlement adequately compensated her for her injuries. (DE 39, Adkins Dep. at 24-25.)

In April 2012, Adkins filed this action against Shelter. The sole remaining claim in this action is Adkins' claim that, in settling her claim, Shelter violated the Kentucky's Unfair Claims Settlement Practices Act ("UCSPA"), KRS § 304.12-230.

## II. Motions

The Court hereby ORDERS as follows with regard to the following motions:

1) **Shelter's motion to exclude bad faith expert testimony (DE 216)**

    Shelter's motion to exclude expert testimony that it acted in bad faith when handling Adkin's claim (DE 216) is DENIED as moot. Shelter has filed a notice that it is withdrawing the motion.

3

2) **Adkins' motions regarding "surprise" witnesses and exhibits (DE 222 and 224)**

Adkins moves the Court to prohibit "surprise" exhibits (DE 222) and witnesses (DE 224). Adkins does not identify any particular exhibits or witnesses but instead refers only to "surprise" witnesses and exhibits generally. These motions are denied as premature. Adkins may reassert objections with regard to any particular exhibit or witness at the appropriate time at trial.

3) **Adkins' motion to prohibit attacks on counsel (DE 226)**

Adkins moves the Court to prohibit ad hominem attacks against her counsel and specifically any references to her counsel as "TV Lawyers" or "Advertising Lawyers." The Court grants the motion to the extent Adkins requests that Shelter be prohibited from referring to her counsel as "TV Lawyers" or "Advertising Lawyers." To the extent that the motion is directed at any other possible comments that could arise at trial, the motion is denied with leave for Adkins to reassert objections to any specific comments or testimony at the appropriate time at trial.

4) **Adkins' motion regarding prior offenses (DE 229)**

Adkins moves the Court to preclude any reference to her prior marijuana conviction, pending marijuana charge, and prior traffic offenses. Shelter states it does not intend to introduce such evidence. Accordingly, the motion is GRANTED.

5) **Adkins' motion regarding roles performed by any government entity (DE 231)**

Adkins moves the Court to preclude any references to the fact that no governmental entity has ever investigated Shelter's minor settlement practices. Shelter does not object to this portion of the motion. Accordingly, the motion is GRANTED to the extent that Adkins asks the Court to preclude references to the fact that no governmental entity has investigated Shelter's minor settlement practices. To the

4

extent that Adkins requests that any other references to governmental entities be precluded, the motion is DENIED as premature. Adkins may reassert objections to any particular comments or testimony at the appropriate time at trial.

Dated July 29, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY