UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| **KAYLA ADKINS,** | **CIVIL ACTION NO. 5:12-173-KKC** |
| **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **SHELTER MUTUAL INS. CO.,** | |
| **Defendant.** | |

This matter is before the Court on various motions filed by the parties in anticipation of the trial of this matter. The plaintiff Kayla Adkins asserts a statutory bad faith claim against defendant Shelter Mutual Ins. Co. The matter is set for trial on August 17, 2015.

## I.    Background

On October 25, 2008, Adkins, was in an automobile accident. She was 17 years old at the time. The accident was caused by another driver, Anthony Mason, who was insured by defendant Shelter.

Adkins' mother, Jessica Collins, filed a claim with Shelter for property damage to her car and that claim was settled on November 17, 2008. (DE 116-50, Notes.) Shelter adjuster Linda Yates noted on that same date that she was waiting on Adkins to return medical authorizations. (DE 116-50, Notes.) On December 11, 2008, Yates noted that Adkins still had not returned medical authorizations and she phoned Collins. (DE 116-3, Notes.)

Yates' notes reflect that Collins informed Yates that Adkins was "fine." Collins stated that Adkins had experienced only "bruising and soreness" and that she had not gone for any follow-up medical care. Yates informed Collins that Kayla Roe, the passenger in Adkins' car, had retained an attorney. Collins stated that Adkins was "only bruised and she is not pursuing any claim." (DE 116-3, Notes.)

About a week later, Yates phoned Collins again and explained that Adkins was entitled to a bodily injury settlement from Shelter even though she was not pursuing a claim and offered her $500. (DE 116-4, Notes.) Collins accepted and, in return, she signed a document provided by Shelter called "Indemnifying Release (Minors)." The release can be reasonably interpreted to release Shelter and Mason from all claims, including any claims Adkins herself may have, stating:

> [W]e, individually and as a parents, release [Mason and Shelter] from *any and all* claims, demands, damages, actions, causes of action, or suits *of whatever kind or nature*, including bodily injuries sustained by Kayla Adkins, a minor. . . .or arising out of damages or direct or indirect loss we sustained from an accident on the 25th day of October, 2008. . . [W]e agree to hold [Mason and Shelter] harmless for any claim *for the minor or any other party* resulting from the minor's injury in this accident, and to reimburse any loss, damage, or costs that [Mason or Shelter] pays if any litigation arises from these injuries. This release fully settles and discharges *all claims* against [Mason and Shelter]. . . I/We have fully read, understand, and voluntarily accept this agreement to *fully and finally compromise all claims*, disputed or not, based on the injuries and damages from this accident.

(DE 82-4, Release) (emphasis added.)

Collins testified that, at the time she signed the release, Adkins "was not showing any health problems." (DE 116-5, Collins Dep. at 17.)

While the release can reasonably be interpreted to settle all claims against Shelter and Mason, Shelter's Casualty Claims Adjusting Guidelines state that it "releases the parent or guardians' claim but not the minor's claim." The guidelines continue, however, that if the minor "should later pursue his or her injury claim, any amount paid in addition to the amount paid for this release could be claimed from the party signing this release." (DE 121-1, Guidelines at CM-ECF p. 14.) In other words, if the minor should assert her rights as an adult, the parent would ultimately have to pay what the minor is due.

No party sought court approval of the settlement. A Kentucky statute, KRS § 387.280, mandates court approval for certain settlements with minors but does not state which party must obtain it. *Lawson v. Dawson*, No. 2003-CA-00448-MR, 2004 WL 1909357 at *5 (Ky. App.

2

2004) ("Neither in the statutes or the case law is it stated on whom the burden rests to ensure that a settlement on behalf of a minor is correctly executed.")

Adkins agrees that the statute does not make clear which party should obtain court approval. (DE 118, Response at 13.) Shelter's position is that Collins, as Adkins' custodian, was the party who was required to obtain approval. (DE 116-1, Mem. at 20.) Regardless, "[t]he case law makes clear that any settlement on behalf of a minor without the approval of the court and appointment of a guardian is subject to collateral attack." *Lawson*, 2004 WL 1909357 at *5 (discussing KRS §§ 387.280 and 387.125(6)).

Adkins turned 18 in April 2009. On October 26, 2009, she filed suit against Mason – Shelter's insured – seeking additional compensation for her alleged injuries. Adkins and Mason eventually settled that claim in January 2012 for $12,000. Adkins testified that the settlement adequately compensated her for her injuries. (DE 39, Adkins Dep. at 24-25.)

In April 2012, Adkins filed this action against Shelter. The sole remaining claim in this action is Adkins' claim that, in settling her claim, Shelter violated the Kentucky's Unfair Claims Settlement Practices Act ("UCSPA"), KRS § 304.12-230. Both parties have filed various motions in limine.

## II.  Motions

### 1) Adkins' motion regarding references to society's litigiousness and her unjust enrichment (DE 233)

Adkins move the Court to preclude any witness or lawyer from stating that she will be unjustly enriched if she should win the lawsuit or that she will have "hit the lottery." She also asks the Court to preclude any witness or lawyer from stating that there are too many pending lawsuits, society is too litigious or that there is a litigation industry in our country that should be excluded. This motion is GRANTED to the extent that Adkins seeks to preclude any statements by lawyers or witnesses that society in general is too litigious or that there are too many lawsuits in the country overall. Statements to this effect are prohibited. The motion is otherwise DENIED as premature. Adkins' request regarding statements about her particular motives is too broad. For example, Shelter should not be precluded from presenting evidence or argument that Adkins herself has not been damaged by Shelter's actions or that she is seeking

an excessive award.  Adkins may reassert this motion at the appropriate time
during trial with regard to specific evidence or argument.

**2) Shelter's motion to exclude testimony that it violated 806 KAR 2:070
(DE 212)**

Shelter moves to exclude any testimony or evidence that it violated a Kentucky
Administrative Regulation dealing with the retention of insurance records and
documents.  That regulation provides that an insurer's "accounts, records,
documents" must be "preserved in their entirety. . . unless specifically excused
by the executive director, for a period of not less than five (5) years following
creation of the material or the completion of the purpose for which it was
created, whichever shall occur last." 806 KAR 2:070, §1 (emphasis added).

Citing this provision, Shelter argued that it could not comply with Adkins'
discovery request for all Kentucky claim files involving minor settlements in
which court approval was not obtained. Shelter stated that, pursuant to 806
KAR 2:070, "[c]laim files closed prior to 2008 were purged in the ordinary course
of business." Shelter represented to the Court that it "maintains its files for the
current year, plus five preceding years." (DE 33, Response at 7.)

Despite citing the rule as the reason it could not comply with Adkins' discovery
request, Shelter now argues that 806 KAR 2:070 does not apply to claims files
and that the applicable regulation is found at 806 KAR 12:095 which requires
that claim data be "available for all open and closed files for the current year
and the five (5) preceding years." 806 KAR 12:095, §3(1).

 What is most relevant to this matter is Shelter's destruction of the claim files at
issue. This constitutes evidence that Shelter did intend and understand that the
indemnifying release finally settled all claims, including the minor's claims.
This is relevant to Adkins' allegation that Shelter intentionally misrepresented
that the release settled the minor's claim and that Shelter sought to deter
minors from asserting future claims. Accordingly, evidence that Shelter
destroyed claim files involving injured minors in which the parent or guardian
signed the indemnifying release is relevant and admissible.

Whether the destruction of the files violated any regulation, however, is
debatable and not probative of any of the issues in this case.  The introduction of
competing evidence on whether Shelter violated an administrative regulation
would confuse the issues in this matter and result in undue delay and a waste of
time.

Accordingly, pursuant to Federal Rule of Evidence 403, the Court hereby
ORDERS that the motion is GRANTED to the extent that Shelter asks the
Court to prohibit any testimony or evidence that Shelter violated either of the
above-referenced regulations. The motion is otherwise DENIED. Adkins is not
prohibited from introducing evidence that Shelter destroyed claim files
involving injured minors whose parents or guardians signed the indemnifying
release that Collins signed.

**3) Shelter's motion to exclude evidence of its litigation conduct (DE 217)**

Shelter moves to exclude evidence of its litigation conduct in Adkins' tort action against Mason. In particular, it moves to exclude evidence that, in its answer in the tort action, it asserted the affirmative defenses of "accord and satisfaction," "doctrine of release," and the "doctrine of payment," (DE 82-5, Tort Action Answer). Adkins argues that the pleading of these defenses constituted a continuing misrepresentation by Shelter that the release settled all claims, including those of the minor or that it is evidence that Shelter intended that the release settled all claims.  The three defenses are affirmative defenses that must be pleaded in an answer or they may be waived under Kentucky Rule of Civil Procedure 8.03. *See Vogler v. Salem Primative Baptist Church*, 415 S.W.2d 72, 74 (Ky. 1967).

In *Knotts v. Zurich Ins. Co.*, the Kentucky Supreme Court adopted "'an absolute prohibition' on the introduction of evidence of litigation conduct as proof of an insurer's bad faith."  *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 534-35 (6th Cir. 2006) (quoting *Knotts v. Zurich Ins. Co.,* 197 S.W.3d 512,522 (Ky. 2006)). This is because the Rules of Civil Procedure provide a remedy for improper litigation conduct. *Knotts*, 197 S.W.3d at 523. Further, "[t]o permit the jury to pass judgment on the defense counsel's trial tactics and to premise a finding of bad faith on counsel's conduct places an unfair burden on the insurer's counsel, potentially inhibiting the defense of the insurer." *Id.*

The assertion of affirmative defenses in an answer is litigation conduct which is governed by the Federal Rules of Civil Procedure including the provision for sanctions under Rule 11.

Accordingly, the Court GRANTS Shelter's motion. Any evidence, testimony, or argument regarding the defenses that Shelter asserted in Adkins' tort action against Mason or any other evidence of Shelter's *litigation conduct* in that action is excluded.  Any evidence, testimony, or argument regarding Adkins' *litigation conduct* in that action is likewise excluded.

Evidence of either party's *settlement conduct* after the tort action was filed may, however, be admissible.  *Id*. at 523. This depends upon whether its probative value is substantially outweighed by any potential prejudice, confusion or undue delay under Federal Rule of Evidence 403. *Id.*  Neither party has moved the Court to exclude evidence of its settlement conduct.

Dated August 3, 2015.

*Karen K. Caldwell*

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

5