UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **KAYLA ADKINS,** | **CIVIL ACTION NO. 5:12-173-KKC** |
| **Plaintiff,** | |
| V. | **OPINION AND ORDER** |
| **SHELTER MUTUAL INS. CO.,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on various motions filed by the parties in anticipation of the trial of this matter. The plaintiff Kayla Adkins asserts a statutory bad faith claim against defendant Shelter Mutual Ins. Co. The matter is set for trial on August 17, 2015.

**I.  Background**

On October 25, 2008, Adkins, was in an automobile accident while driving her mother's car. She was 17 years old at the time. The accident was caused by another driver, Anthony Mason, who was insured by defendant Shelter.

Adkins' mother, Jessica Collins, filed a claim with Shelter for property damage to her car and that claim was settled on November 17, 2008. (DE 116-50, Notes.) Shelter adjuster Linda Yates noted on that same date that she was waiting on Adkins to return medical authorizations. (DE 116-50, Notes.) On December 11, 2008, Yates noted that Adkins still had not returned medical authorizations and she phoned Collins. (DE 116-3, Notes.)

Yates' notes reflect that Collins informed Yates that Adkins was "fine." Collins stated that Adkins had experienced only "bruising and soreness" and that she had not gone for any follow-up medical care. Yates informed Collins that Kayla Roe, the passenger in Adkins' car, had retained an attorney. Collins stated that Adkins was "only bruised and she is not pursuing any claim." (DE 116-3, Notes.)

About a week later, Yates phoned Collins again and explained that Adkins was entitled to a bodily injury settlement from Shelter even though she was not pursuing a claim and offered her $500. (DE 116-4, Notes.) Collins accepted and, in return, she signed a document provided by Shelter called "Indemnifying Release (Minors)." The release can be reasonably interpreted to release Shelter and Mason from all claims, including any claims Adkins herself may have, stating:

> [W]e, individually and as a parents, release [Mason and Shelter] from *any and all* claims, demands, damages, actions, causes of action, or suits *of whatever kind or nature*, including bodily injuries sustained by Kayla Adkins, a minor. . .or arising out of damages or direct or indirect loss we sustained from an accident on the 25th day of October, 2008. . . [W]e agree to hold [Mason and Shelter] harmless for any claim *for the minor or any other party* resulting from the minor's injury in this accident, and to reimburse any loss, damage, or costs that [Mason or Shelter] pays if any litigation arises from these injuries. This release fully settles and discharges *all claims* against [Mason and Shelter]. . . I/We have fully read, understand, and voluntarily accept this agreement to *fully and finally compromise all claims*, disputed or not, based on the injuries and damages from this accident.

(DE 82-4, Release) (emphasis added.)

Collins testified that, at the time she signed the release, Adkins "was not showing any health problems." (DE 116-5, Collins Dep. at 17.)

While the release can reasonably be interpreted to settle all claims against Shelter and Mason, Shelter's Casualty Claims Adjusting Guidelines state that it "releases the parent or guardians' claim but not the minor's claim." The guidelines continue, however, that if the minor "should later pursue his or her injury claim, any amount paid in addition

2

to the amount paid for this release could be claimed from the party signing this release." (DE 121-1, Guidelines at CM-ECF p. 14.) In other words, if the minor should assert her rights as an adult, the parent would ultimately have to pay what the minor is due.

No party sought court approval of the settlement. A Kentucky statute, KRS § 387.280, mandates court approval for certain settlements with minors but does not state which party must obtain it. *Lawson v. Dawson*, No. 2003-CA-00448-MR, 2004 WL 1909357 at *5 (Ky. App. 2004) ("Neither in the statutes or the case law is it stated on whom the burden rests to ensure that a settlement on behalf of a minor is correctly executed.") Regardless of which party must obtain approval, "[t]he case law makes clear that any settlement on behalf of a minor without the approval of the court and appointment of a guardian is subject to collateral attack." *Lawson*, 2004 WL 1909357 at *5 (discussing KRS §§ 387.280 and 387.125(6)).

Adkins turned 18 in April 2009. About six months later, on October 26, 2009, she filed suit against Mason – Shelter's insured – seeking additional compensation for her alleged injuries. Adkins and Mason eventually settled that claim in January 2012 for $12,000. Adkins testified that the settlement adequately compensated her for her injuries. (DE 39, Adkins Dep. at 24-25.)

In April 2012, Adkins filed this action against Shelter. The sole remaining claim in this action is Adkins' claim that, in settling her claim, Shelter violated the Kentucky's Unfair Claims Settlement Practices Act ("UCSPA"), KRS § 304.12-230. The parties have field various motions in limine.

**II.     Motions**

**1) Adkins' motion to exclude testimony or argument that she exhibited signs of symptom magnification or "Waddell" signs (DE 232)**

Adkins moves the court to prohibit any evidence or argument that she exhibited signs of symptom magnification or so-called "Waddell" signs. "Waddell's signs are a group of physical signs which may indicate non-organic or psychological components to chronic low back pain. Historically, Waddell signs have been used to detect malingering." *Copenhaver v. Commissioner of Social Sec.*, No. 1:14-cv-41, 2015 WL 457472 at *3 n.5 (S.D.Ohio,2015).

Specifically, Adkins argues that no witness nor Shelter's counsel should be permitted to state that Dr. Robert P. Knetsche found that she was "symptom magnifying" or exaggerating her symptoms. Dr. Knetsche saw Adkins in August 2009 – long after her mother signed the December 2008 release but a couple of months before her October 2009 suit against Mason. Dr. Knetsche noted that Adkins was positive for two of four Waddell signs.  (DE 116-10, Knetsche report at CM-ECF p.4.)

At his deposition, Dr. Knetsche testified that when a patient tests positive for any of the four Waddell signs, "it starts to make you a little concerned." But he also testified that the use of Waddell signs is "less accurate than was previously believed."

Shelter argues that Adkins' complaint can be reasonably read to assert that Shelter exercised bad faith not only in December 2008 when it obtained an indemnifying release signed by Adkins' mother, but also in handling her claim after she filed suit against Mason in October 2009.  Adkins does not deny that she asserts Shelter exercised bad faith after she filed suit against Mason.

Shelter asserts that it utilized Dr. Knetsche's report in evaluating Adkins' claim after she filed suit against Mason. Assuming that Shelter can produce evidence to that effect, the report is relevant to Adkins' bad faith claim. Dr. Knetsche may be questioned by both

parties regarding the significance of his finding that Adkins exhibited two of four Waddell signs. Both sides may then make arguments consistent with his testimony or other relevant evidence.

Accordingly, Adkins' motion is DENIED to the extent that she moves the Court to prohibit any testimony regarding Waddell signs. Dr. Knetsche may testify regarding his finding that Adkins' exhibited two of four Waddell signs and may also testify as to the significance of that finding. Adkins' motion is otherwise DENIED as premature. The Court will permit argument that is consistent with the evidence that is presented at trial, including any testimony from Dr. Knetsche that Adkins did or did not exhibit signs of symptom magnification. Lawyers for both parties are admonished that statements made in their opening and closing arguments must be consistent with the evidence presented.

**2) Shelter's motion for clarification of the Court's March 26, 2015 opinion and order (DE 221)**

Shelter moves the Court to clarify the extent to which KRS 387.280 may be discussed at trial. The Court hereby GRANTS that motion and makes the following clarification.

KRS 387.280 permits a minor's custodian to settle a minor's claim where the minor is entitled to receive a sum less than $10,000. It further requires that such settlements be approved by a state court, although it does not state who should petition the court for approval. No party obtained court approval of Shelter's settlement with Collins.

The statute provides, in relevant part, the following:

> When a minor or other person under disability, having no guardian or conservator, is entitled to receive a sum not exceeding ten thousand dollars ($10,000), exclusive of interest, in any action in which real estate has been sold or in the settlement of any estate or from any other source, *the person having custody of the minor or other person under disability may settle or compromise the dollar amount when in the interest of the minor or other person under disability*. The court in which the action is pending, or, if the sum does not derive from the action, the District Court, may order the sum to be paid to the person having custody of the minor or other person under disability. *Before entering the order, the court shall approve any settlement or*

5

>    *compromise* and shall be satisfied by affidavit or oral testimony that the minor or other person under disability is in the custody of the person to whom it is proposed to pay the money and the latter, upon withdrawal of the money, shall be under obligation as trustee to expend it, for the support, maintenance, or education of the minor or other person under disability.

KRS 387.280 (emphasis added).

Both parties seem to agree that this statute would be applicable if the indemnifying release was intended to release Adkin's claims while she was a minor. This Court has determined that the statute is ambiguous as to which party must obtain court approval of a minor settlement.

Shelter's argument regarding the statute is admittedly not clear to the Court. It has argued that the statute is inapplicable because the indemnifying release did not release Adkins' claims but instead released only Collins' claims. Shelter had also argued, however, including in its pretrial motions, that the release was ineffective because no party obtained court approval. This indicates that the statute is applicable and that Shelter did intend to release Adkin's claims as a minor.

Regardless of which argument Shelter intends to present to the jury, it will not be permitted to introduce evidence or argument that Collins violated KRS 387.280 by not obtaining court approval of the settlement or that the statute required Collins to obtain court approval of the settlement. This would be inconsistent with the Court's determination that the statute is ambiguous on this issue.

Adkins, on the other hand, argues that the statute is applicable because Shelter did intend that the indemnifying release would release Adkins' claims against Mason and Shelter. While Adkins argues that the statute is applicable, she also agrees with the Court that the statute is ambiguous as to which party should obtain court approval of the settlement.

6

Accordingly, Adkins does not and cannot assert that Shelter violated KRS 387.280 by not obtaining court approval of the settlement. Even she contends that this is unclear. Instead, she charges that Shelter acted in bad faith by various acts when handling her claim.

For this reason, the Court need not resolve the meaning of KRS 387.280. As the Court explained in its March 26, 2015 order, what matters here is not whether Shelter violated KRS § 387.280 but whether it acted in bad faith in evaluating and processing Adkins' claim.

Because Adkins does not claim that Shelter violated KRS 387.280 and because the Court has determined that the statute does not clearly charge either party with obtaining court approval of a settlement with a minor, it would seem that the statute need not be mentioned at trial at all and that testimony regarding it may confuse the jury.

Nevertheless, Shelter may intend to present fact testimony that it did not obtain court approval of the settlement because it did not believe it was required to under the statute. If such testimony should be elicited, the Court will instruct the jury that a state statute requires that settlements on behalf of minors be approved by the court but the statute does not clearly charge either party with the responsibility of seeking the approval.

Adkins argues that testimony should be presented to the jury regarding the purpose of the statute, which she argues is to protect minors during settlement negotiations. Such testimony may be relevant if the jury were being asked to determine which party was obligated to obtain court approval of the settlement. It will not be asked to make that decision.  Accordingly, neither party will be permitted to present testimony or argument regarding the purpose of KRS 387.280.

### 3) Shelter's motion to exclude testimony and argument that it violated KRS 387.280 (DE 219)

Shelter moves to exclude any testimony or argument that it violated KRS 387.280 by failing to obtain court approval of the settlement. For the above reasons, that motion is GRANTED.

In its motion, Shelter indicates that Adkins may seek to present testimony that it violated another Kentucky statute – KRS 387.125 – by failing to obtain court approval of the settlement. The Court does not understand Adkins to argue that this statute is applicable to Shelter's settlement with Collins. Accordingly, any testimony that Shelter violated KRS 387.125 by failing to obtain court approval of the settlement at issue is also excluded.

Dated August 3, 2015.

*signature*

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY